[No. B007102. Second Dist., Div. Five. June 25, 1985.]

PATSY A. HERBERT et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KAISER FOUNDATION HOSPITALS et al., Real Parties in Interest.

KAISER FOUNDATION HOSPITALS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CAROLYN HERBERT et al., Real Parties in Interest.

COUNSEL

Gage & Mazursky and Russell S. Kussman for Petitioners and Real Parties in Interest.

No appearance for Respondent.

Thelen, Marrin, Johnson & Bridges, Curtis A. Cole, Robert C. Barnes and Donald P. Johnson for Real Parties in Interest and Petitioners.

OPINION

HASTINGS, J.—Petitioners Patsy Herbert et al., are the widow and eight children of Clarence Herbert and the plaintiffs in a wrongful death action against Kaiser Foundation Hospitals, Southern California Permanente Medical Group, and Doctors Neil Barber and Robert Nejdl (real parties in interest and cross-petitioners). Clarence Herbert was a member of the Kaiser Foundation Health Plan as were his wife and five minor children. Three adult heirs (petitioners Carolyn Herbert, Marilyn Herbert and Paula Eck) were not members of the plan. In this case we are called upon to decide whether any or all of petitioners are bound to submit their claim to arbitration as required by the Kaiser plan agreement.

FACTS

In January 1980, Clarence Herbert enrolled his wife and five minor children in a Kaiser group health plan negotiated by the Teamsters. The plan agreement included a provision requiring arbitration of any claim asserted by a member or a member's heir or personal representative arising from the rendition or failure to render services under the agreement, irrespective of the legal theory upon which the claim is asserted.

On August 24, 1981, Mr. Herbert entered the Kaiser Hospital in Harbor City for closure of an ileostomy. While in the surgical recovery room, he

suffered a cardiorespiratory arrest, resulting in a deprivation of oxygen to the brain. He was revived and placed on life support systems, but remained in a deep coma.

Within the next few days, it was determined that Mr. Herbert had suffered severe brain damage and was not likely to recover. The family ultimately directed that life-support systems be removed, and Mr. Herbert died on September 6, 1981.[1]

On November 29, 1982, petitioners filed suit against real parties alleging that Mr. Herbert had not received proper medical care. The Herbert estate filed claims for medical negligence and fraud, and the heirs filed claims for wrongful death, fraud, and negligent infliction of emotional distress. In a first amended complaint, they added a cause of action for "wrongful termination of life support."

At the same time they answered petitioners' first amended complaint, real parties filed a motion to compel arbitration, citing the arbitration clause in the plan agreement. A period of legal wrangling ensued and during this period the claims by the estate were voluntarily dismissed.

In the order which is the subject of this petition, the superior court enforced the arbitration clause as to Mrs. Herbert and the five minor children, but not as to the three adults. The court stayed the civil action as to the latter, pending the outcome of the arbitration.

The court's solution failed to please anyone. The heirs seek a writ of mandate compelling the superior court to vacate that portion of its order requiring some of them to submit to arbitration and staying the proceeding as to the rest. Petitioners argue that none of them should be compelled to submit to arbitration.

Kaiser, et al., seek a writ of mandate compelling the superior court to order the three adults into arbitration.

We have determined that Kaiser's position is the correct one and that all petitioners are bound by the arbitration agreement.

## DISCUSSION

This is a case alleging wrongful death, a cause of action which is wholly statutory in origin. (Code Civ. Proc., § 377.) ■ In *Mayerhoff* v. *Kaiser*

---

[1] Removal of the life-support systems resulted in a murder prosecution against Doctors Barber and Nejdl. The charges were ultimately dismissed. (See *Barber* v. *Superior Court* (1983) 147 Cal.App.3d 1006 [195 Cal.Rptr. 484].)

*Foundation Health Plan, Inc.* (1977) 71 Cal.App.3d 803 [138 Cal.Rptr. 319], we held that section 377 contemplated only one action or joint actions by the various classes of persons entitled to sue:

" 'The statutory cause of action for wrongful death (sec. 377, Code Civ. Proc.) is one to be exercised by all the heirs, yet it is a joint one, a single one and an indivisible one. [Citations.] In such actions, the court or jury must compute the damages, if any, by considering the pecuniary damage suffered by all the heirs and return a verdict for one sum. This suit must be brought in the name of the persons to whom the right is given, and an action by some, but not all, of the heirs is not the action authorized under the statute. [Citation.] If the plaintiffs recover judgment, it is then the duty of the court, in a separate proceeding, to apportion the amount to be awarded each heir. [Citations.]' " (*Mayerhoff* v. *Kaiser Foundation Health Plan, Inc.*, 71 Cal.App.3d 803, 807, citing *Watkins* v. *Nutting* (1941) 17 Cal.2d 490, 498 [110 P.2d 384].)

Both petitioners and real parties recognize this rule of law and its impact on this case. Because a wrongful death cause of action may not be split, the case must be tried in a single forum.

Kaiser contends that all of petitioners are bound by the agreement executed by Mr. Herbert and all must submit their claim to arbitration. Petitioners concede that Mr. Herbert was bound by the agreement, but argue that they never agreed to the arbitration provision and never authorized Mr. Herbert to do so on their behalf.

■ The claims of Mrs. Herbert and the five minor children are governed by *Hawkins* v. *Superior Court* (1979) 89 Cal.App.3d 413 [152 Cal.Rptr. 491] (a case which also involved a Kaiser plan). The plaintiff, Mrs. Hawkins, filed a wrongful death action alleging that the death of her husband, a Kaiser plan member, was caused by medical malpractice committed at a Kaiser facility. As in this case, the decedent had enrolled both himself and his wife in the Kaiser plan. The plan application provided in part: "I hereby apply for the enrollment of myself and those members of my family listed. I understand that if this application is accepted by Kaiser Foundation Health Plan the benefits for which we will be eligible will be in accordance with the master contract applicable to the type of coverage for which we are enrolled."

After Mrs. Hawkins filed her wrongful death action, Kaiser petitioned for an order to compel arbitration, citing the arbitration clause contained in the Kaiser master contract. Mrs. Hawkins opposed the motion, contending that she could not be compelled to submit to arbitration because she never per-

sonally agreed to be bound by the plan's arbitration clause and did not authorize her husband to act on her behalf. The court rejected her argument, citing *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699 [131 Cal.Rptr. 654, 552 P.2d 438], and *Doyle* v. *Giuliucci* (1965) 62 Cal.2d 606 [43 Cal.Rptr. 697, 401 P.2d 1].

In *Doyle,* the Supreme Court held that an arbitration clause contained in a health plan agreement executed by a father was binding upon his minor child who was also enrolled in the plan. The court reasoned that the power to enter into a contract for medical care that binds a child to arbitrate any dispute arising thereunder is implicit in a parent's right and duty to provide for the care of his child. (62 Cal.2d at p. 610.)

In *Madden,* the plaintiff, who contracted serum hepatitis from blood transfusions following surgery, filed a complaint for malpractice against the Kaiser Foundation Hospital, the Kaiser Permanente Medical Group, her surgeon, and two independent blood banks. After Kaiser moved to compel arbitration on the basis of a clause in the plan agreement covering state employees, the plaintiff contested the motion on the ground that she had not received notice of the arbitration clause, did not agree to it, and would not have waived her right to a jury trial on her malpractice claim had she known of the arbitration provision.

The Supreme Court rejected this argument, holding that the Board of Administration of the State Employees Retirement System, as agent for state employees authorized to negotiate group medical plans, had implied authority to provide for arbitration of malpractice claims on the employees' behalf.

The *Hawkins* court held that spouses can contract for health plans for each other due to their mutual obligations of care and support and their fiduciary relationship to each other: "Spouses have mutual obligations to care for and support the other (Civ. Code, § 242), including the obligation to provide medical care [citations], and they occupy a fiduciary relationship to each other. [Citations.] Decedent had the power to contract for the health plan for himself and his wife and, as in *Doyle* as viewed by *Madden,* implicit in that power is the implied authority to agree for himself and his wife to arbitrate claims arising out of medical malpractice." (89 Cal.App.3d at pp. 418-419.)

The court concluded: "The arbitration provision of the master contract for the Kaiser Plan covers claims asserted: 'By a Member, or by a Member's heirs or personal representative . . . [o]n account of death or bodily injury arising out of the rendition or failure to render services under this

Agreement, . . .' Those provisions manifestly contemplate arbitration of a claim for the wrongful death of a 'Member' when asserted by a surviving 'Member.'" (*Id.*, at p. 419.)

Under the reasoning of *Hawkins* and *Doyle,* Mrs. Herbert and the five minor children who were members of the plan are bound by the contractual provisions of the plan agreement, including the arbitration clause.

■ The *Hawkins* court left undecided the issue which now confronts us: whether the arbitration provision of the plan agreement is binding upon adult heirs who are not members of the plan. (*Hawkins* v. *Superior Court, supra,* 89 Cal.App.3d at p. 419, fn. 5.) We conclude that the arbitration contract executed by Mr. Herbert bound both the member and nonmember heirs to arbitrate their claims.

Important to our determination of this issue is an analysis of the agreement and the legal policies supporting it. The agreement was negotiated by the Teamsters, of which decedent was a member, with Kaiser for the benefit of the union's members. It is similar in nature to the agreement reviewed in *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, which was a medical services contract entered into between the Board of Administration of the State Employees' Retirement System and the Kaiser Foundation Health Plan. Plaintiff in *Madden* was a state employee who enrolled under the Kaiser plan. She contended she was not bound by the arbitration provision that required her to arbitrate her malpractice action against Kaiser because it was one of adhesion, and it denied her the constitutional right to a trial by jury. The Supreme Court rejected her contentions as follows:

"We shall point out that although plaintiff relies upon principles pertaining to adhesion contracts to bar enforcement of the arbitration provision, such precepts only affect contractual provisions imposed by the stronger party upon the weaker which unfairly limit the duties or liability of the stronger. They do not apply to the arbitration provision in this case, a product of negotiations between parties possessing parity of bargaining strength, providing merely for a forum for enforcement of the rights of enrolled employees rather than a substantive limitation of them.

"We shall reject, finally, plaintiff's contention that the arbitration provision violates constitutional and statutory provisions protecting the right to trial by jury. Persons entering into arbitration agreements know and intend that disputes arising under such agreements will be resolved by arbitration, not by juries; neither decision nor policy calls for an explicit waiver of the parties' right to jury trial or for express conformance with Code of Civil

Procedure section 631, the applicable procedural statute." (*Madden,* 17 Cal.3d at p. 703.)

The court, after approving the legality of the agreement between Kaiser and the union, expressed in detail the strong judicial and public policy favoring arbitration over litigation as a means of settling disputes in medical malpractice cases. This concept was extended to wrongful death actions in *Hawkins* v. *Superior Court, supra,* 89 Cal.App.3d 413, 416. The Legislature has also recognized arbitration as a forum for handling wrongful death claims. (Code Civ. Proc., §§ 1283.1, 1295.)

This brings us to the key issue namely whether the adult heirs in our present case are bound by the arbitration requirements of the agreement. The arbitration provision provides that any member or a *member's heir* or personal representative must arbitrate any claim arising from the rendition or failure to Kaiser to render services provided under the agreement.[2]

The reasons requiring the nonsigning heirs to be bound by the agreement are far more convincing than any arguments in support of the trial court order that would require two separate and distinct proceedings. First, we cannot ignore the established law that a single cause of action exists in the heirs for the wrongful death of a decedent. (*Mayerhoff* v. *Kaiser Foundation Health Plan, Inc., supra,* 71 Cal.App.3d 803.) This requirement alone should prevent a splitting of the litigation into different tribunals where differing rulings and results could destroy the Legislature's policy enunciated in *Mayerhoff.* Second, it is obviously unrealistic to require the signatures of all the heirs, since they are not even identified until the time of death, or they might not be available when their signatures are required. Furthermore, if they refused to sign they should not be in a position possibly to delay medical treatment to the party in need. Although wrongful death is technically a separate statutory cause of action in the heirs, it is in a practical sense derivative of a cause of action in the deceased. Decedents are able to bind their heirs through wills and other testamentary dispositions so the concept is not new or illogical. Instead it is the only pragmatic solution in such a situation. Our Supreme Court recognized the need for a somewhat similar realistic approach in *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, at footnote 11, on page 709. The footnote states: "Amicus suggests that we should fashion a new rule to the effect that no arbitration provision in a group insurance policy will bind the beneficiary absent proof

---

[2]This case is clearly distinguishable from *Rhodes* v. *California Hospital Medical Center* (1978) 76 Cal.App.3d 606 [143 Cal.Rptr. 59], where the court held that an agreement to arbitrate signed by a decedent with the defendant hospital did not bind a nonsigning party to the agreement. There was no provision in the agreement whereby the signing party intended to bind his or her heirs to the arbitration clause.

of the beneficiary's *actual* knowledge of that provision. . . . Apart from the plaintiff's own testimony, neither the Board nor Kaiser have any way of proving whether or not plaintiff read all or part of that brochure. The orderly administration of the plan would be impossible if it were to depend on such proof. . . . [A]micus' proposal for a special rule which discriminates against enforcement of arbitration clauses would be viable only if arbitration were an extraordinary procedure, and one especially disadvantageous for the beneficiary—propositions which we have rejected in *Doyle* and other cases cited in this opinion." (Italics in original.)

Other collateral statutory and case law is supportive in form and logic. In some instances, a decedent, by entering into a contract may limit or bar certain types of actions by his heirs.[3] The decedent by contract often chooses the forum in which the claim of his heirs arising out of his death may be tried. As we noted previously in this opinion, in the case of a medical services contract containing an arbitration clause, a father can bind a minor child (*Doyle* v. *Giuliucci, supra,* 62 Cal.2d 606; codified in Code Civ. Proc., § 1295, subd. (d)); a husband can bind a wife (*Hawkins* v. *Superior Court, supra,* 89 Cal.App.3d 413); and, a mother can bind a child to arbitrate claims arising out of the child's prenatal injuries, even though the child was not a plan member when the injuries occurred (*Wilson* v. *Kaiser Foundation Hospitals* (1983) 141 Cal.App.3d 891 [190 Cal.Rptr. 649]).

The Legislature refers to arbitration of wrongful death claims in title 9 of the Code of Civil Procedure, which governs all contractual arbitration proceedings. In section 1283.1, subdivision (a), the Legislature provides that "[a]ll of the provisions of Section 1283.05 [relating to the right of discovery in arbitration proceedings] shall be conclusively deemed to be incorporated into, made a part of, and shall be applicable to, *every agreement to arbitrate any dispute, controversy, or issue arising out of or resulting from any injury to, or death of, a person caused by the wrongful act or neglect of another.*" (Italics added.)

The Legislature has also enacted Code of Civil Procedure section 1295, providing for arbitration of "professional negligence" claims, including wrongful death. Subdivisions (a) through (c) of that section set forth strict requirements for a valid medical malpractice arbitration provision in an

---

[3]See railroad pass cases holding that an agreement by the holder of a railroad pass to waive any claim against the railroad barred the heirs in a wrongful death action. (*Francis* v. *Southern Pacific Co.* (1948) 333 U.S. 445 [92 L.Ed. 798, 68 S.Ct. 611]; *Northern P.R. Co.* v. *Adams* (1904) 192 U.S. 440 [48 L.Ed. 513, 24 S.Ct. 408]; *Mehegan* v. *Boyne City G. & A. R. Co.* (1913) 178 Mich. 694 [141 N.W. 905]; *Perry* v. *Philadelphia, B. & W. R. Co.* (1910) 1 Boyce 339 [24 Del. 399, 77 A. 725]; *Griswold* v. *New York & N. E. R. Co.* (1885) 53 Conn. 371 [4 A. 261].)

individual contract for medical services. Although these requirements are inapplicable to so-called "health care service plans" such as Kaiser (Code Civ. Proc., § 1295, subd. (f)), this is only because such plans must contain alternative means for notifying plan members of arbitration provisions in the plan agreements.[4] Under section 1295, arbitration of wrongful death or other professional negligence claims may not be compelled if the requirements of that section are not met. It logically follows that arbitration provisions may be enforced where, as here, proper notice of the arbitration provision is given.

Code of Civil Procedure sections 1283.1 and 1295 evidence a legislative intent that a patient who signs an arbitration agreement may bind his heirs to that agreement, regardless of whether the heirs are also members of the plan. It would be illogical to construe these statutory provisions to apply only under the fortuitous circumstances that *all* potential heirs are also plan members. With a single cause of action for wrongful death existing in all heirs under Code of Civil Procedure section 377, the party entering into a plan agreement similar to the one in question *must* have the authority to bind nonmember heirs.

The petition for writ of mandate is therefore denied; the cross-petition of Kaiser, et al., is granted.

Let a peremptory writ of mandate issue directing the respondent to vacate that portion of its order of August 15, 1984, staying the civil action as to plaintiffs Carolyn Herbert, Marilyn Herbert and Paula Eck, and enter a new and different order granting the motion of defendants for an order compelling arbitration as to all plaintiffs.

Ashby, Acting P. J., and Osborne, J.,* concurred.

A petition for a rehearing was denied July 23, 1985, and petitioners' application for review by the Supreme Court was denied October 17, 1985. Bird, C. J., Mosk, J., and Broussard, J., were of the opinion that the application should be granted.

---

[4]The Kaiser plan in issue here is licensed pursuant to subdivision (f) of section 1295 and complies with the requirements of that section.

*Assigned by the Chairperson of the Judicial Council.