[No. A115123. First Dist., Div. Three. May 2, 2007.]

GEORGE FITZHUGH et al., Plaintiffs and Respondents, v.
GRANADA HEALTHCARE AND REHABILITATION CENTER, LLC,
et al., Defendants and Appellants.

**COUNSEL**

Hinshaw, Draa, Marsh, Still & Hinshaw and Tyler G. Draa for Defendants and Appellants.

Law Offices of Michael D. Thamer, Michael D. Thamer; Janssen, Malloy, Needham, Morrison Reinholtsen & Crowley, Patrik Griego, W. Timothy Needham and Michael J. Crowley for Plaintiffs and Respondents.

**OPINION**

**SIGGINS, J.**—Granada Healthcare and Rehabilitation Center, LLC, Devin M. Shelby, Skilled Healthcare Group, Inc., and Skilled Healthcare, LLC, appeal an order denying their petition to compel arbitration. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 15, 2004, 83-year-old decedent Ruth Fitzhugh was admitted to Granada Healthcare and Rehabilitation Center, LLC (Granada), to receive convalescent and custodial care for her recently repaired fractured hip. She was transferred and admitted to an acute-care hospital for treatment of a fractured femur on November 27, 2004. She died in the hospital on December 4, 2004.

In their second amended complaint, decedent's spouse, plaintiff George Fitzhugh, as her successor in interest and individually, and decedent's two adult sons, plaintiffs John and Frank Fitzhugh, alleged causes of action for elder abuse, fraud, violations of the Patients Bill of Rights contained in title 22, section 72527 of the California Code of Regulations, and wrongful death. They claimed that decedent's fractured femur was sustained when she fell while she was a resident of Granada. The complaint named as defendants Granada and Skilled Healthcare Group, Inc., and its wholly owned subsidiary,

Skilled Healthcare, LLC, entities alleged to have directed, owned, operated, administered, and/or managed Granada, and Devin Shelby, as the administrator of Granada's facility and an agent or employee of Granada during the decedent's stay at the facility.

Defendants petitioned to stay the litigation and compel arbitration of plaintiffs' claims due to provisions of two agreements between Granada and decedent, signed by plaintiff George Fitzhugh, as decedent's "Legal Representative/Agent." One agreement requires binding arbitration of medical malpractice claims. The other agreement provides for binding arbitration of "any claim . . . arising out of the provision of services by the Facility, the admission agreement, the validity, interpretation, construction, performance and enforcement thereof, or which allege violations of the Elder Abuse and Dependent Adult Civil Protection Act, or the Unfair Competition Act, or which seek an award of punitive damages or attorney'[s] fees." Each of the agreements expressly states that decedent did not waive her right under Health and Safety Code section 1430 to bring a lawsuit in court against the facility for violations of the Patients Bill of Rights contained in title 22, section 72527 of the California Code of Regulations. Each of the agreements also states: "This arbitration agreement binds the parties hereto, including the heirs, representatives, executors, administrators, successors, and assigns of such parties."

Plaintiffs opposed the petition arguing that defendants waived any right to arbitration, that George Fitzhugh was fraudulently induced into signing the arbitration agreements, that the claims brought pursuant to Health and Safety Code section 1430 and for wrongful death were not subject to arbitration, and that the court should deny the petition in its discretion because individual claims by decedent's survivors were not subject to arbitration and because proceedings in separate forums could result in inconsistent rulings on common issues of law and fact.

Defendants' petition was denied on several grounds. The court determined the claims for violations pursuant to Health and Safety Code section 1430 and for wrongful death were not subject to the arbitration agreements. Even assuming decedent's claims were subject to arbitration, the individual claims of plaintiffs George, John, and Frank Fitzhugh, were not, and the court exercised its discretion to deny the petition due to the possibility of conflicting rulings on common issues of law or fact were the claims to proceed in different forums. Finally, the court concluded that nothing in the record

suggested plaintiffs named third parties, or raised issues outside the arbitration agreement, to purposely avoid arbitration. Defendants timely appeal from the order denying their petition to compel. (Code Civ. Proc., § 1294, subd. (a).)

## DISCUSSION

Defendants argue that the court erred, as a matter of law, when it refused to compel arbitration under the terms of the arbitration agreements executed by plaintiff George Fitzhugh in his capacity as agent for decedent. Defendants argue the court should have factually determined whether George Fitzhugh was acting as an agent, and ask us to remand the matter for a determination of that issue. Remand is not warranted because the ruling may be affirmed for the reasons stated by the court without addressing George Fitzhugh's role as decedent's purported agent.[1]

Defendants do not dispute that each of the arbitration agreements excludes from arbitration a patient's claims brought pursuant to Health and Safety Code section 1430, subdivision (b),[2] for violations of the Patients Bill of Rights under title 22, section 72527 of the California Code of Regulations. We are not persuaded by defendants' argument that any cause of action authorized by Health and Safety Code section 1430, subdivision (b) may not survive the death of a patient. "Except as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." (Code Civ. Proc., § 377.20, subd. (a).) We assume the Legislature was aware when it

---

[1] Consequently, we express no opinion regarding the decision in *Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581 [55 Cal.Rptr.3d 823], in which the Fourth District Court of Appeal, Division One, determined that decedent's husband in that case had neither the contractual nor statutory authority to bind his wife to arbitration as part of the facility's admission agreement. (*Id.* at pp. 586–594.)

[2] We note that at the time the arbitration agreements were signed, Health and Safety Code section 1430 provided, in relevant part: "A resident or patient of a skilled nursing facility . . . or intermediate care facilities . . . may bring a civil action against the licensee of a facility who violates any rights of the resident or patient as set forth in the Patients Bill of Rights in Section 72527 of Title 22 of the California Administrative Code." (Health & Saf. Code, former § 1430, subd. (b).) By Statutes 2004, chapter 270, section 2, Health and Safety Code section 1430, subdivision (b), was amended to read, in pertinent part: "A current or former resident or patient of a skilled nursing facility . . . or intermediate care facility . . . may bring a civil action against the licensee of a facility who violates any rights of the resident or patient as set forth in the Patients Bill of Rights in Section 72527 of Title 22 of the California Code of Regulations, or any other right provided for by federal or state law or regulation." (Health & Saf. Code, § 1430, subd. (b).)

added subdivision (b) to section 1430 of the Health and Safety Code in 1982 (Stats. 1982, ch. 1455, § 1, pp. 5598, 5599), that survival causes of action for violations of statutory rights were permitted under Probate Code former section 573, the predecessor to Code of Civil Procedure section 377.20. Since there is no contrary statutory provision, the death of a patient or resident does not abate any cause of action pursuant to Health and Safety Code section 1430, subdivision (b). Thus, any cause of action pursuant to Health and Safety Code section 1430, subdivision (b) survived decedent's death and was not subject to arbitration.

Neither was the cause of action brought by plaintiffs George, John and Frank Fitzhugh, individually, for decedent's wrongful death, subject to the arbitration agreements. (*Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142–144 [119 Cal.Rptr.2d 489] (*Buckner*).) It is irrelevant to the wrongful death cause of action whether George Fitzhugh may have signed the arbitration agreements as the decedent's "legal representative/agent." Because there is no evidence that George Fitzhugh signed the arbitration agreements in his personal capacity, and because John and Frank Fitzhugh did not sign the arbitration agreements, there is no basis to infer that they waived their personal right to jury trial on the wrongful death claim. (*Goliger v. AMS Properties, Inc.* (2004) 123 Cal.App.4th 374, 378 [19 Cal.Rptr.3d 819]; *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 [112 Cal.Rptr.2d 358]; see *Buckner, supra,* at pp. 142–143.)[3]

We are not persuaded that *Herbert v. Superior Court* (1985) 169 Cal.App.3d 718 [215 Cal.Rptr. 477] (*Herbert*) requires the wrongful death claim to be arbitrated in this case. As explained by the *Buckner* court: "In *Herbert*, the decedent husband was married and had eight children, three of whom were adults. The decedent, his wife, and their five minor children belonged to a group health plan, but the three adult children did not. ([*Herbert, supra*,] at p. 720.) The group plan required arbitration of all claims, including those by heirs. (*Ibid.*) After the husband died, his widow and all their children sued for wrongful death. (*Id.* at p. 721.) The medical plan sought arbitration, which the trial court ordered for the widow and minor children, but denied for the

---

[3] Defendants' reliance on *Hogan v. Country Villa Health Services* (2007) 148 Cal.App.4th 259 [55 Cal.Rptr.3d 450] and *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253 [33 Cal.Rptr.3d 350], is misplaced. In both cases, the appellate courts merely held that the decedent's survivor claims were subject to arbitration because decedent's agents were authorized to sign arbitration agreements on behalf of the decedent pursuant to health care power of attorney documents. (*Hogan, supra,* at pp. 262–263, 264–270; *Garrison, supra,* at pp. 256, 266–267.) The courts did not address whether separate claims by heirs for decedent's wrongful death were also subject to arbitration.

adult children. (*Ibid.*) [¶] On appeal, the *Herbert* court ordered the adult children to arbitrate their wrongful death claim. The court reasoned wrongful death is a single, joint and indivisible claim possessed by all survivors; it cannot be split, and must be tried in one forum. (*Herbert, supra*, 169 Cal.App.3d at pp. 722, 725.) Because the widow and minor children were indubitably obligated to arbitrate their claim, it was impractical, the court reasoned, to let the adult children pursue their claims outside arbitration. (*Id.* at p. 725.)[4] [¶] *Herbert* is distinguishable . . . [and its] rationale is inapplicable here because [George, John, and Frank Fitzhugh, individually] are not dividing their wrongful death claims between different forums. Accordingly, *Herbert* does not apply." (*Buckner, supra*, 98 Cal.App.4th at p. 143.) The *Buckner* court also appropriately distinguished *Mormile v. Sinclair* (1994) 21 Cal.App.4th 1508, 1511 [26 Cal.Rptr.2d 725], because that case did not involve nonsignatory adult heirs and because its citation to *Herbert* was without analysis and mischaracterized *Herbert*'s holding. (*Buckner, supra*, at p. 144.)

■ Pursuant to Code of Civil Procedure section 1281.2, subdivision (c), "the court may, in its discretion, refuse to compel arbitration or may stay arbitration where 'there is a possibility of conflicting rulings on a common issue of law or fact.' " (*Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 100 [284 Cal.Rptr. 255].) While there is a strong public policy in favor of arbitration, there is an "equally compelling argument that the Legislature has also authorized trial courts to refuse enforcement of an arbitration agreement [or stay the arbitration] when, as here, there is a possibility of conflicting rulings. ([Code Civ. Proc.,] § 1281.2, subd. (c).)" (*C. V. Starr & Co. v. Boston Reinsurance Corp.* (1987) 190 Cal.App.3d 1637, 1642 [236 Cal.Rptr. 167].) Defendants argue the court should have stayed the litigation pending resolution of any claims subject to arbitration because the litigation may not render the arbitration unnecessary. But that concern does not warrant reversal. We will not disturb the court's discretionary ruling unless it exceeded the bounds of reason. (*Henry v. Alcove Investment, Inc., supra*, at p. 101; see *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479 [243 Cal.Rptr. 902, 749 P.2d 339].) If plaintiffs' claims proceed in different forums, there is a potential for inconsistent rulings on a common fact, such as

---

[4] The *Herbert* court also noted that it would be "obviously unrealistic to require the signatures of all the heirs, since they are not even identified until the time of death, or they might not be available when their signatures are required. Furthermore, if they refused to sign they should not be in a position possibly to delay medical treatment to the party in need." (*Herbert, supra*, 169 Cal.App.3d at p. 725.) The concerns expressed in *Herbert* do not operate in this case because the execution of an arbitration agreement was not a precondition to decedent's receiving medical treatment or for her admission to the facility.

whether any violations of the Patients Bill of Rights caused the decedent's injuries or her death. "The existence of this possibility of conflicting rulings on a common issue of fact is sufficient grounds for a stay under [Code of Civil Procedure] section 1281.2." (*Henry v. Alcove Investment, Inc., supra,* at p. 101.)

■ Upholding the court's order in this case does not undermine public policy favoring enforcement of valid arbitration agreements. Neither will arbitration agreements cease to be enforceable so long as plaintiffs "toss in" a cause of action alleging violations of the Patients Bill of Rights. Accepting these arguments by defendants would minimize the Legislature's expression of public policy that under no circumstances may a patient or resident waive his or her right to sue for violations of rights under the Patients Bill of Rights, or other federal and state laws and regulations, which would include the existing Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.). (Health & Saf. Code, § 1430, subd. (b), see Assem. Com. on Health, analysis of Assem. Bill No. 2791 (2003–2004 Reg. Sess.) as amended Apr. 1, 2004, pp. 1, 3–4.)[5] In providing for the "private, civil enforcement of laws against elder abuse and neglect," under the Elder Abuse and Dependent Adult Civil Protection Act in 1991, " '[T]he Legislature declared that "infirm elderly persons and dependent adults are a disadvantaged class, that cases of abuse of these persons are seldom prosecuted as criminal matters, and few civil cases are brought in connection with this abuse due to problems of proof, court delays, and the lack of incentives to prosecute these suits." ([Welf. & Inst. Code,] § 15600, subd. (h), added by Stats. 1991, ch. 774, § 2.)' . . . . [T]he Senate Rules Committee's analysis of Senate Bill No. 679 [states:] 'in practice, the death of the victim and the difficulty in finding an attorney to handle an abuse case where attorneys fees may not be awarded, impedes many victims from suing successfully. [¶] This bill would address the problem by: . . . authorizing the court to award attorney's fees in specified cases; [and by] allowing pain and suffering damages to be awarded when a verdict of intentional and reckless abuse was handed down after the abused elder dies.' (Sen. Rules Com., Analysis of Sen. Bill No. 679 (1991–1992 Reg. Sess.) as amended May 8, 1991, p. 3.)" (*Delaney v. Baker* (1999) 20 Cal.4th 23, 33 [82 Cal.Rptr.2d 610, 971 P.2d 986].) Consequently, we conclude that upholding the trial court is consistent with public policy expressed in the statutes enacted by the Legislature "to protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect" (*ibid.*), and to ensure appropriate relief for such mistreatment.

---

[5] See footnote 2, *ante.*

## DISPOSITION

The order denying defendants' petition to compel arbitration is affirmed.

Parrilli, Acting P. J., and Pollak, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 18, 2007, S153385.