Filed 11/20/20  Gibbons v. Silverado Senior Living Management CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| JAMES E. GIBBONS et al.,<br><br>      Plaintiffs and Respondents,<br><br>v.<br><br>SILVERADO SENIOR LIVING MANAGEMENT, INC.,<br><br>      Defendant and Appellant. | D076703<br><br><br><br><br>(Super. Ct. No. 37-2019-00047592-CU-PO-CTL) |

APPEAL from an order of the Superior Court of San Bernardino, County, Donna G. Garza, Judge and San Diego County, Kenneth J. Medel, Judge.[1]  Reversed and remanded with directions.

Giovanniello Law Group and Alexander F. Giovanniello, Thomas C. Swann, Cat N. Bulaon for Defendant and Appellant.

Peck Law Group and Steven Charles Peck, Adam J. Peck, Spencer E. Peck for Plaintiffs and Respondents.

---

[1]    The petition to compel arbitration was heard in San Bernardino Superior Court, and Judge Garza's tentative ruling denying the petition became her final order.  The case was later transferred to the San Diego Superior Court.

Appellant Silverado Senior Living Management, Inc. dba Silverado Senior Living—Encinitas (Silverado)[2] appeals from the trial court's order denying its petition to compel arbitration and motion to stay Gayle Gibbons's elder abuse and wrongful death lawsuit brought in her capacity as successor in interest to James Gibbons, her deceased spouse,[3] and in her own capacity. The court concluded Gayle signed an arbitration agreement as James's representative; therefore, she retained a wrongful death claim in her individual capacity. It exercised its discretion under Code of Civil Procedure[4] section 1281.2, subdivision (c), to refuse to enforce the arbitration agreement, reasoning the existence of Gayle's separate claim posed a risk of inconsistent judgments.

Silverado contends: (1) the arbitration agreement that Gayle signed as James's representative was also binding on Gayle individually, thus barring her separate wrongful death claim; and (2) because the Federal Arbitration Act (FAA) governs the arbitration agreement, the trial court lacked discretion to stay arbitration of James's and Gayle's claims under section 1281.2, subdivision (c). We conclude the court erred by denying the petition as to James's claims, which were governed by the arbitration agreement and the FAA; however, it did not err by denying the petition as to Gayle's individual

---

[2]    The complaint names as codefendants Blossom Grove Management Ca, LLC dba Blossom Grove Alzheimer's Special Care Center (Blossom) and Scripps Health dba Scripps Memorial Hospital—Encinitas (Scripps); however, they are not parties to this appeal.

[3]    We refer to respondents by their first names to avoid confusion, and intend no disrespect.

[4]    Undesignated statutory references are to the Code of Civil Procedure.

claim.  Accordingly, we reverse the order and remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

*The Complaint*

In her capacity as James's successor in interest (§ 377.32) and on her own behalf, Gayle sued all defendants for elder abuse (Welf. & Inst. Code, § 15600 et seq.).  She also alleged causes of action against Silverado and Blossom for wrongful death, and against Scripps and Doe defendants for wrongful death by neglect (§ 377.60).  She alleged that James, who was over 65 years of age, "developed scabies, MRSA [Methicillin-resistant Staphylococcus Aureus], sepsis, pressure ulcers, and suffered extreme weight loss" while in the care and custody of defendants, including Silverado, which is an assisted-living or residential care facility.

Gayle further alleged that defendants "recklessly neglected [James] by breaching their duties of care owed to [him] in failing to provide [him] with the care and treatment to which he was entitled . . . failing to prevent the development of infections, failing to report his change of condition and providing timely care, failing to developing and implementing [*sic*] care plans, failing to treat the infections, failing to assist with personal hygiene resulting in skin breakdown to [James's] body, failing to provide staff with the knowledge, skills and competencies to care for residents with infection and skin breakdown, and failing to prevent [James] from experiencing pain and suffering."  Gayle also alleged:  "Defendants 'neglected' [James] as that term is defined in Welfare and Institutions Code, [section] 15610.57 in that Defendants themselves, as well as their employees, failed to exercise the degree of care that reasonable persons in a like position would exercise by

3

denying or withholding goods or services necessary to meet [his] basic needs." James died in August 2016.

*The Petition to Compel Arbitration and Motion to Stay Proceedings*

Silverado in its petition to compel arbitration pointed out that James had designated Gayle as his attorney-in-fact. It claimed Gayle signed the arbitration agreement as James's representative or agent, and the agreement applied to both James's and Gayle's causes of action.

The arbitration agreement provides that "any claim or dispute . . . arising out of the provision of services . . . including but not limited to . . . any action for injury or death arising from negligence, intentional tort and/or statutory causes of action (including but not limited to alleged violations of Elder Abuse . . .) will be determined by submission to arbitration as provided by [the FAA]." It states that "arbitration shall be conducted by one or more neutral arbitrators in accordance with the procedures set forth in the [FAA], Code of Civil Procedure [*sic*]." A separate provision of the agreement states it "shall be governed by and interpreted under the [FAA], 9 U.S.C. sections 1-16." The agreement provides it "shall be binding on all parties, including their personal representatives, executors, administrators, successors, guardians, heirs, and assigns." The agreement also states: *"Based on the resident's mental capacity, the term resident may include responsible party, [power of attorney], guardian and/or conservator."* (Hereafter the mental capacity provision; some capitalization omitted.)

Gayle opposed the petition, arguing: (1) she did not have legal authority to enter into a contract on James's behalf; (2) Silverado presented no evidence that James authorized her to make decisions for his healthcare; (3) the arbitration agreement fails to comply with statutory requirements; and (4) the codefendants were not parties to the arbitration agreement.

4

The trial court denied Silverado's petition, finding that Gayle had signed the arbitration agreement as James's representative. The court concluded Gayle had a separate right to maintain her wrongful death cause of action in her individual capacity. Pointing out that Gayle did not allege medical malpractice under section 1295, it stayed arbitration, reasoning "there could be a possibility of inconsistent rulings" under section 1281.2.

## DISCUSSION

### I. *Gayle's Wrongful Death Claim Is Not Arbitrable*

Silverado contends that as Gayle signed the arbitration agreement, "not only did [she] agree to be bound by [it] in her individual capacity, she expressly agreed that [it] would be governed by the FAA and require that all claims for [James's] death, including those based on neglect as alleged in the complaint, will be arbitrated." Silverado relies on the arbitration agreement's mental capacity provision. Gayle argues that as she was not a party to the arbitration agreement, she was not required to arbitrate her wrongful death claim.

A party generally cannot be compelled to arbitrate a dispute that he or she has not agreed to resolve by arbitration. (*Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142; *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 ["The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration"].) Whether an arbitration agreement is binding on a third party (e.g., a nonsignatory) is a question of law subject to de novo review. (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1512.)

"Unlike some jurisdictions wherein wrongful death actions are derivative, . . . section 377.60 'creates a *new cause of action* in favor of the

5

heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived.'" (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 283; see San *Diego Gas & Electric Co. v. Superior Court* (2007) 146 Cal.App.4th 1545, 1550-1551 ["Because a wrongful death action compensates an heir for his or her own independent pecuniary losses, it is one for 'personal injury to the heir' "].)

We conclude that because Gayle signed the arbitration agreement as James's representative, she was a third party to the arbitration agreement and therefore was not bound to arbitrate her separate wrongful death claim. We rely on *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, in which the surviving spouse and three adult children of Ruth Fitzhugh sued a convalescent care facility for her wrongful death. (*Id.* at pp. 471-472.) The surviving spouse had signed two arbitration agreements with the facility as the decedent's "legal representative" and "agent." (*Id.* at p. 472.) Although the arbitration agreements were binding on the decedent's heirs, the court concluded that the decedent's surviving spouse and adult children were not required to arbitrate their wrongful death claims because no evidence showed that the spouse signed the agreements in his personal capacity, and the adult children did not sign either agreement. (*Id.* at p. 474.) Accordingly, there was "no basis to infer" that the spouse or adult children "waived their personal right to jury trial on the wrongful death claim." (*Ibid.*)

The same is true here. Because Gayle signed the arbitration agreement solely as James's agent and not in her personal capacity, we have no basis to infer that she agreed to arbitrate her wrongful death claim. In context, the mental capacity provision making the arbitration clause binding

6

on a "resident," the definition of which in certain circumstances included the person granted a power of attorney, means only that the duty to arbitrate the survivor claims is binding on James and other persons who would assert the survivor claims on his behalf. The arbitration agreement does not indicate an intent to bind third parties with claims independent of the survivor claims, such as wrongful death claimants. We therefore conclude the court did not err by denying the petition as to Gayle's separate cause of action.

## II. *Silverado's Causes of Action Are Arbitrable*

Silverado contends the court erred in failing to grant its petition to compel arbitration of all claims, given that the arbitration agreement specifies the FAA procedures will apply to the arbitration. Gayle concedes "the arbitration agreement states it is governed by the FAA," but nevertheless contends the court had discretion to deny Silverado's petition under section 1281.2, subdivision (c).

"In accordance with choice-of-law principles, the parties may limit the trial court's authority to stay or deny arbitration under the [California Arbitration Act] by adopting the more restrictive procedural provisions of the FAA." (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 157.) "[T]he FAA's *procedural* provisions (9 U.S.C. §§ 3, 4, 10, 11) do not apply unless the contract contains a choice-of-law clause expressly incorporating them." (*Id.* at p. 174.) "The question, therefore, is whether the parties expressly incorporated the FAA's procedural provisions into their agreements." (*Id.* at p. 177; see also *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 387, 394 (*Cronus*) ["Our opinion does not preclude parties to an arbitration agreement to expressly designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law"], italics omitted.)

7

Under section 1281.2, subdivision (c), a court may stay or refuse to compel arbitration of all or part of an arbitrable controversy when (1) "[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of related transactions," and (2) "there is a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2, subd. (c).) For purposes of the statute, a third party is one who is neither bound by nor entitled to enforce the arbitration agreement. (*Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 612.) Section 1281.2, subdivision (c) " 'addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement.' " (*Cronus, supra,* 35 Cal.4th at p. 393.) "When the trial court makes a discretionary decision under section 1281.2 [, subdivision] (c), the reviewing court will affirm unless an abuse of discretion is shown. . . . 'The court's discretion under section 1281.2, subdivision (c) does not come into play until it is ascertained that the subdivision applies.' " (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 709.)

"The question of whether the [Arbitration] Agreement incorporated the FAA's procedural provisions, thereby eliminating the trial court's authority under section 1281.2[, subdivision](c), 'is a question of law involving interpretation of statutes and the contract (with no extrinsic evidence). We therefore apply a de novo standard of review.' " (*Valencia v. Smyth, supra,* 185 Cal.App.4th at pp. 161-162.)

Here, the arbitration agreement specifies that the FAA's procedures apply, and that the agreement shall be governed and interpreted under the FAA. Accordingly, the court erred by not granting Silverado's petition to arbitrate James's claims for elder abuse and wrongful death. Silverado is

8

entitled to the benefit of the arbitration agreement that governs James's claims. Moreover, in California, "the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.] Consequently, courts will ' "indulge every intendment to give effect to such proceedings." ' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) As the California Supreme Court has concluded: "Any doubts or ambiguities as to the scope of the arbitration clause itself should be resolved in favor of arbitration." (*Cronus, supra,* 35 Cal.4th at p. 386.)

We recognize that having concluded James's claims are arbitrable but Gayle's claim is not, the parties may be required to participate in duplicative proceedings. However, we are constrained by the parties' arbitration agreement. As the California Supreme Court has recognized, "the FAA itself contains no provision designed to deal with the special practical problems that arise in multiparty contractual disputes when some or all of the contracts at issue include agreements to arbitrate. California has taken the lead in fashioning a legislative response to this problem, by giving courts authority to consolidate or stay arbitration proceedings in these situations in order to minimize the potential for contradictory judgments." (*Cronus*, *supra*, 35 Cal.4th at p. 392.) But that provision—section 1281.2, subdivision (c)—is inapplicable here because the parties expressly agreed that the FAA applies to their arbitration agreement. Another court in similar circumstances stated, "While we may question the wisdom of the parties' choice, and decry the potential for inefficiency, delay, and conflicting rulings, the parties were free to choose their arbitration rules. The court will not rewrite their contract." (*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1122.)

9

Unlike the present arbitration agreement which contains provisions stating the FAA's procedural rules apply, the trial court relied on cases containing no such provisions.  (See *Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674; *Avila v. Southern California Specialty Care* (2018) 20 Cal.App.5th 835, 841 ["the agreement here does not even mention the FAA, much less expressly adopt its procedural rules.  Accordingly, the FAA's procedural rules do not apply here"]; and *Bush v. Horizon West* (2012) 205 Cal.App.4th 924, 926 ["we conclude the application of section 1281.2[, subdivision] (c) was not preempted here by the [FAA]").

DISPOSITION

The order denying the petition to compel arbitration is reversed.  The court is directed to enter a new order granting the petition to arbitrate only as to James Gibbons's separate claims.  Each party is to bear its own costs on appeal.

O'ROURKE, J.

WE CONCUR:


HALLER, Acting P. J.


GUERRERO, J.