# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00619-COA

**PROPST F. PITTMAN**                                                                                    **APPELLANT**

**v.**

**CHARLES SCHWAB & CO., INC.**                                                                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/08/2024 |
| TRIAL JUDGE: | HON. JAMES McCLURE III |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | DAVID H. LINDER |
| ATTORNEY FOR APPELLEE: | JOSHUA DANIEL JONES |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 11/04/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., EMFINGER AND WEDDLE, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1.     Propst Pittman filed a complaint in the Panola County Circuit Court against Charles Schwab & Co. Inc. (Charles Schwab) and Computershare Inc. (Computershare).  Pittman asserted claims of conversion and negligence against the companies.  In response, Charles Schwab filed several motions, including both initial and amended motions to compel arbitration and a motion to stay litigation pending arbitration.  Following a hearing, the circuit court granted Charles Schwab's amended motion to compel arbitration.  On appeal, Pittman argues that the circuit court erroneously granted the amended motion to compel arbitration.  Because we agree, we reverse the circuit court's order and remand this matter for further proceedings before the circuit court.

## FACTS

¶2. In February 2015, Pittman's aunt, Patty Sullivan, opened a brokerage account with Charles Schwab. Separately from her Charles Schwab account, Sullivan had a Computershare account that held about 1,366 shares of AT&T stock. Sullivan designated Pittman as the "transfer-on-death" beneficiary of her AT&T shares.

¶3. Sullivan died on February 11, 2023. Seventeen days later, on February 28, 2023, a third party allegedly forged Sullivan's signature on a Charles Schwab form and requested the transfer of the AT&T shares from Sullivan's Computershare account to her Charles Schwab account. Charles Schwab processed the request, and Computershare transferred the AT&T shares into the Charles Schwab account. At the time of the March 2, 2023 transfer, the AT&T shares were valued at $25,489.56.

¶4. On June 28, 2023, Pittman filed a complaint against Computershare and Charles Schwab. Pittman contended that the companies had negligently allowed the conversion of the AT&T shares, and she sought monetary damages totaling $75,000. In response, Charles Schwab filed various motions, including motions to compel arbitration and stay the case with Pittman pending arbitration. Charles Schwab asserted that Pittman's claims fell within the scope of the arbitration provisions to which Sullivan had agreed when she opened her Charles Schwab account in February 2015. Pittman contended, however, that she was not a party to the arbitration agreement between Sullivan and Charles Schwab and therefore could not be forced to arbitrate her claims against Charles Schwab.

¶5. After a hearing, the circuit court determined that in February 2015, Sullivan and

Charles Schwab entered into "a valid and enforceable contract containing a pre-dispute arbitration clause . . . ." The circuit court further determined that Pittman constituted a third-party beneficiary under the terms of the arbitration agreement and that her claims fell within the scope of the arbitration agreement. As a result, the circuit court ordered Pittman to arbitrate her claims against Charles Schwab and stayed any further proceedings between Pittman and Charles Schwab pending the outcome of the arbitration. Aggrieved by the circuit court's order, Pittman appeals.

## DISCUSSION

¶6. Pittman argues that the circuit court erred by ordering her to arbitrate her claims against Charles Schwab. Specifically, Pittman challenges the circuit court's findings that she was a third-party beneficiary of the arbitration agreement between Sullivan and Charles Schwab and that her claims fell within the scope of the arbitration agreement.

¶7. "We review de novo the grant of a motion to compel arbitration." *Est. of Boleware v. McPhail*, 407 So. 3d 1093, 1099 (¶13) (Miss. Ct. App. 2025). As we explained in *Estate of Boleware*,

> [w]hen determining whether a party is bound to arbitration, we apply a two-prong inquiry. First, we determine if a valid arbitration agreement exists; if so, we then consider whether the parties' dispute is within the scope of the arbitration agreement. If both questions in the first prong are answered in the affirmative, we move to the second prong and ask whether legal constraints external to the parties' agreement foreclosed arbitration of those claims.

*Id.* at (¶15) (citations and internal quotation marks omitted).

¶8. Pittman does not dispute the validity of the arbitration agreement that Sullivan entered into with Charles Schwab in February 2015. As discussed, though, Pittman contends that the

3

circuit court erroneously found that she constitutes a third-party beneficiary of the arbitration agreement. The Mississippi Supreme Court "has held that a nonsignatory may be bound to an arbitration agreement under ordinary principles of contract and agency. A signatory may enforce an arbitration agreement against a non-signatory if the non-signatory is a third-party beneficiary or if the doctrine of equitable estoppel applies." *Olshan Found. Repair Co. of Jackson LLC v. Moore*, 251 So. 3d 725, 728 (¶8) (Miss. 2018) (citations and internal quotation marks omitted). As our supreme court has explained,

> [t]hird-party-beneficiary status arises from the terms of the contract. A person or entity may be deemed a third-party beneficiary if: (1) the contract between the original parties was entered for that person's or entity's benefit, or the original parties at least contemplated such benefit as a direct result of performance; (2) the promisee owed a legal obligation or duty to that person or entity; and (3) the legal obligation or duty connects that person or entity with the contract. . . . [T]his Court [previously has] offered the following analysis for determining third-party-beneficiary status:
>
> > (1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.
>
> A third-party beneficiary also must benefit directly from the contract. A mere incidental or consequential benefit is insufficient.

*Simmons Hous. Inc. v. Shelton ex rel. Shelton*, 36 So. 3d 1283, 1286-87 (¶¶10-11) (Miss. 2010) (citations omitted).

¶9.     In discussing whether Charles Schwab's arbitration agreement applies to Pittman, we recognize that Pittman asserted her claims as the beneficiary of the AT&T shares held in

4

Sullivan's Computershare account, which Sullivan maintained separately from her Charles Schwab account.[1] Viewing Pittman in this way, we can find no credible evidence to indicate that at the time Sullivan and Charles Schwab entered into their arbitration agreement, they intended for the beneficiary of an entirely separate entity's account to fall within the benefits and subject of their agreement.

¶10.  The dissent disagrees and relies on *Smith Barney Inc. v. Henry*, 775 So. 2d 722 (Miss. 2001), to find that Pittman is indeed bound by Sullivan's arbitration agreement with Charles Schwab. Dis. Op. at ¶¶16-17. Despite the similarities between *Henry* and the present case, we find one particular factual difference significant. In reaching its conclusion in *Henry* that the financial firm's arbitration agreements applied and that Henry was a third-party beneficiary, the supreme court noted that Henry's claims **derived directly from the decedent's accounts and transactions with that specific financial firm**. *Henry*, 775 So. 2d at 726-27 (¶¶14-21). By contrast, as repeatedly discussed, Pittman's claims arise not from Sullivan's accounts and transactions directly with Charles Schwab but from her status as the beneficiary of account funds maintained in a completely separate entity from Charles Schwab. Thus, unlike the dissent, we conclude that Pittman's claims fall outside the bounds of the terms of Sullivan's arbitration agreement with Charles Schwab.

¶11.  Moreover, we find nothing in the record to demonstrate, nor does the dissent point to

---

[1] In its appellate brief, Charles Schwab points out that Pittman "is also the sole heir to [Sullivan's] residual [e]state, which includes the [Charles] Schwab [a]ccount." As stated, however, Pittman raised her claims against Charles Schwab in her role as the beneficiary of Sullivan's separately maintained Computershare account, and we therefore confine our discussion about the applicability of Charles Schwab's arbitration agreement to that limited context.

any evidence to support, that Sullivan and Charles Schwab contemplated that an unauthorized transfer of assets from another entity (Computershare), which occurred several weeks after Sullivan's death, would then enable Charles Schwab to enforce its arbitration agreement with Sullivan against the beneficiary of the separate entity's account. Looking at Pittman solely as the beneficiary of the independently maintained Computershare account, we can find no credible evidence to support the circuit court's determination that in this context, Pittman was a third-party beneficiary of the arbitration agreement that Sullivan executed when opening her Charles Schwab account. Indeed, as the beneficiary of the Computershare account whose assets were allegedly transferred to the Charles Schwab account without her permission and against her wishes, Pittman never sought nor received a direct benefit from the agreement entered into by Sullivan and Charles Schwab.

¶12.    Based upon the foregoing, we conclude that Pittman failed to constitute a third-party beneficiary of the arbitration agreement between Sullivan and Charles Schwab. We further conclude that the circuit court erred by finding that Pittman was bound by the terms of the arbitration agreement and by compelling her to arbitrate her claims against Charles Schwab. We therefore reverse the circuit court's order compelling arbitration and remand this case for further proceedings before the circuit court.

**CONCLUSION**

¶13.    Because we conclude that Pittman, as the beneficiary of a wholly separate entity's account, was not contemplated as a third-party beneficiary to Charles Schwab's arbitration agreement with Sullivan, we find that the circuit court erred in compelling Pittman to

6

arbitrate her claims. Accordingly, we reverse the circuit court's order and remand the matter for further proceedings consistent with this opinion.

¶14. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**WILSON, P.J., DISSENTING:**

¶15. Patty Sullivan entered into an arbitration agreement with Charles Schwab that provided in relevant part:

> Any controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, an instruction or authorization provided to Schwab or the breach of any such agreements, instructions or authorizations; (ii) the Account, any other Schwab account or services; (iii) transactions in the Account or any other Schwab account; (iv) or in any way arising from the relationship with Schwab [or] its parent, subsidiaries, affiliates, officers, directors, employees, agents or service providers . . . , including any controversy over the arbitrability of a dispute, will be settled by arbitration.
>
> *This arbitration agreement will be binding upon and inure to the benefit of the parties hereto and their respective representatives, attorneys-in-fact, heirs, successors, assigns and any other persons having or claiming to have a legal or beneficial interest in the Account . . . .*

(Emphasis added).

¶16. Propst Pittman is the sole heir under Sullivan's will. Therefore, the plain language of the arbitration agreement binds Pittman because she is Sullivan's "heir[]" and has "a legal or beneficial interest in the Account." The Mississippi Supreme Court addressed this same issue in *Smith Barney Inc. v. Henry*, 775 So. 2d 722, 727 (¶¶18-20) (Miss. 2001). In that case, Hilliard maintained Smith Barney accounts that were subject to arbitration agreements

7

that bound her "heirs" and "successors." *Id.* at 723 (¶¶2-3). Hilliard's will established a testamentary trust for the benefit of Hilliard's mother, Gertrude Henry, that included the Smith Barney accounts. *Id.* at (¶4). Hilliard died, and Henry alleged that after Hilliard's death, the trustee improperly diverted funds from the Smith Barney accounts. *Id.* at 723-24 (¶¶4-5). Henry sued Smith Barney for negligence and breach of fiduciary duty for allowing the trustee to convert the funds. *Id.* at 724 (¶6). When Smith Barney sought to enforce Hilliard's arbitration agreements, Henry argued that she was "not bound by" the agreements because she was merely "a non-signatory, unintended, third-party beneficiary of the agreements." *Id.* at 727 (¶18). The Mississippi Supreme Court rejected this argument, holding:

> The agreements plainly state that they are binding on Hilliard's "heirs, successors and administrators . . . ." Other states have interpreted nearly identical agreements in favor of arbitration. In *Collins v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 561 So. 2d 952, 956 (La. Ct. App. 1990), the Louisiana Court of Appeals held that the heirs and successors of a deceased customer of a brokerage firm were bound by the arbitration agreement signed by the customer and the firm. The court stated:
>
>> We find no merit in plaintiff's argument that they are not bound by the arbitration clause because the Customer Agreement was not signed by them, but by their brother. . . . By its own terms, the agreement applies to the successors and assigns of the customer. Moreover, we have held that a written agreement to arbitrate does not necessarily have to be signed by both parties.
>
> *Collins*, 561 So. 2d at 955. Also, in *Herbert v. Superior Court*, 169 Cal. App. 3d 718, 215 Cal. Rptr. 477 (Cal. Ct. App. 1985), the California appellate court held that a widow and her children were bound by an arbitration agreement signed by the children's father which purported to bind his "heirs." Likewise, in this case, Henry is an heir of Hilliard.
>
> In the case at hand, we are dealing with an arbitration clause in which Henry

8

is a successor under the terms of Hilliard's will, and as such, she is specifically covered by the agreement. According to the terms of the agreement, Henry is not required to be a signatory in order to be bound by the arbitration clause. As a successor of Hilliard, Henry is covered by the arbitration clause of the client agreements.

*Henry*, 775 So. 2d at 727 (¶¶18-20) (paragraph break omitted).

¶17. With respect to the question *whether Pittman is bound by* Sullivan's arbitration agreement, there is no material difference between this case and *Henry*. The Supreme Court held that Henry was bound by Hilliard's arbitration agreements because she was Hilliard's heir and inherited the Smith Barney accounts pursuant to a trust created by Hilliard's will. *Id.* Likewise, Pittman is bound by Sullivan's arbitration agreements because she is Sullivan's heir and inherited the Schwab accounts pursuant to Sullivan's will.[2]

¶18. In addition, the subject arbitration agreement is undeniably broad in scope. As set out above, the agreement requires arbitration of, inter alia, "[a]ny controversy or claim arising out of *or relating to* (i) this Agreement, any other agreement with Schwab, *an instruction or authorization provided to Schwab* or the breach of any such agreements, instructions or authorizations; (ii) *the Account* . . . ; (iii) *transactions in the Account* . . . ; (iv) or in any way

---

[2] There is a factual difference in this case in that the securities at issue here were originally held outside the Schwab account and were later transferred into it. That difference may be relevant to the question whether Pittman's claims are within the scope of the arbitration agreements. But it is not relevant to the threshold question whether Pittman—as Sullivan's heir—is bound by the plain language of the arbitration agreements. Notably, *the dissent* in *Henry* argued that Henry was not bound by Hilliard's arbitration agreements because "Henry's claims d[id] not emanate from her status as a direct beneficiary of the account agreements, but rather from her interest in the trust established by Hilliard's will." *Id.* at 731 (¶38) (McRae, P.J., dissenting) (emphasizing that "Henry t[ook] as a beneficiary of the trust and not as a direct beneficiary of the agreements between Hilliard and Smith Barney"). Obviously, the majority in *Henry* did not agree.

9

arising from the relationship with Schwab [or] its parent . . . employees, agents or service providers . . . , *including any controversy over the arbitrability of a dispute*." (Emphasis added). The Mississippi Supreme Court has explained that "[b]road arbitration language governs disputes 'related to' or 'connected with' a contract," whereas "narrow arbitration language requires arbitration of disputes that directly 'arise out of' a contract." *Virgil v. Sw. Miss. Elec. Power Ass'n*, 296 So. 3d 53, 60-61 (¶20) (Miss. 2020) (quoting *MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 176 (¶24) (Miss. 2006)). "Because broad arbitration language is capable of expansive reach, courts have held that it is only necessary that the dispute 'touch' matters covered by the contract to be arbitrable." *Id.* at 61 (¶20) (brackets and other quotation marks omitted) (quoting *Horton*, 926 So. 2d at 176 (¶25)). Here, the arbitration agreement's broad language covers not only all matters "relating to" the Agreement but also all matters "relating to" "the Account" and any "transactions in the Account." Pittman's claim relates to a transfer of funds *to the Account*. Because Pittman's claim touches on a transfer of funds to the Account and a transaction in the Account, it is subject to arbitration.

¶19. Finally, if there is any doubt about whether Pittman's claim is subject to arbitration, the arbitration agreement makes clear that *the arbitrator* must decide that issue. Again, the arbitration agreement states that "*any controversy over the arbitrability of a dispute*[] *will be settled by arbitration*." (Emphasis added). The Mississippi Supreme Court and this Court have consistently held that such language clearly and unmistakably directs that any disputes concerning the scope of the arbitration agreement must be decided by an arbitrator, not a

court.  *Bank of Holly Springs v. Puryear ex rel. Est. of Brown*, 309 So. 3d 598, 603-04 (¶¶14-18) (Miss. Ct. App. 2020); *Greater Canton Ford Mercury Inc. v. Ables*, 948 So. 2d 417, 421-23 (¶¶11-16) (Miss. 2007);  *Swindle v. Harvey*, 23 So. 3d 562, 570-71 (¶¶22-24) (Miss. Ct. App. 2009); *see also Henry Schein Inc. v. Archer & White Sales Inc.*, 586 U.S. 63, 65 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract"—even if the court believes "the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.'").  Accordingly, Pittman's argument that her claims are beyond the scope of the arbitration agreement must be addressed to and decided by an arbitrator, not this Court.

¶20.    In summary, Pittman is bound by Sullivan's arbitration agreement with Schwab, and the parties' dispute—or at least the arbitrability of the dispute—is subject to arbitration. Therefore, the circuit court's order compelling arbitration should be affirmed.  I respectfully dissent.