Filed 8/18/23  Saenz v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| JAMES SAENZ, | |
| Petitioner, | E081098 |
| v. | (Super.Ct.No. CIVSB2200579) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| CITRUS NURSING CENTER et al. | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Wilfred J. Schneider, Jr., Judge.  Petition granted.

Law Offices of James E. Yee and James E. Yee for petitioner.

Beach Law Group, Thomas E. Beach, David W. Loy and Rachel K. Mandelberg for Real Parties in Interest.

No appearance for Respondent.

1

This case arises from the death of nonagenarian Alice Saenz, who was admitted to a residential care facility owned and operated by defendants and real parties in interest Citrus Nursing Center and Sun Mar Management Services.  As part of the admissions process, she executed an arbitration agreement (the agreement).  Plaintiff and petitioner James Saenz, Ms. Saenz's surviving son and successor-in-interest, initiated this action and alleges that his mother's death resulted from elder neglect, professional negligence, negligent hiring, and violation of the patient's bill of rights.  He further asserts a wrongful death claim on his own behalf.  Real parties in interest moved for, and the superior court ordered, arbitration of all claims.

Petitioner seeks a writ of mandate directing the superior court to vacate its March 28, 2023 order and enter a new and different order denying the motion in its entirety or, in the alternative, denying the motion as to petitioner only and instructing the court to make the requisite determination under Code of Civil Procedure[1] section 1281.2 for purposes of deciding whether Ms. Saenz's claims should be adjudicated in superior court contemporaneously with petitioner's claims.  Petitioner contends the court prejudicially erred when it ordered his wrongful death claim to arbitration because (1) he never entered any arbitration agreement, and (2) real parties in interest waived any right to arbitration.  He further contends the court prejudicially erred when it determined the delegation clause in the agreement requires an arbitrator, rather than a superior court judge, to decide issues of interpretation, applicability, and enforceability of the agreement

_____

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

against a nonsignatory.  Real parties in interest maintain the agreement is expressly governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), the court properly interpreted the delegation clause, petitioner is bound by the agreement, and real parties in interest did not waive their right to arbitrate.

We conclude the agreement is not enforceable against petitioner's claim for wrongful death, and section 1281.2 does not apply.  We remand the matter back to the superior court, order it to vacate its March 28, 2023 order, and enter a new and different order denying the motion as to petitioner only.

## I.  PROCEDURAL BACKGROUND AND FACTS

Ms. Saenz was born on October 21, 1928.  On April 15, 2021, she was admitted to a skilled nursing facility owned, operated, and/or controlled by real parties in interest.  As part of the admitting process, she signed the agreement, which provides in article I, section 1.8, that it "*shall be construed and enforced in accordance with and governed by the Federal Arbitration Act and the procedures set forth in the Federal Arbitration Act shall govern any petition to compel arbitration*."  (Italics added.)  Article II, section 2.2, states that it binds "the parties hereto, including the heirs, . . . successors, and assigns of such parties whose claims may arise out of or relate to any services (medical or otherwise) or goods provided by" real parties in interest.  Article I, section 1.6, gives the arbitrator "exclusive authority to resolve any Dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement."  On July 9, 2021, Ms. Saenz passed away.

3

On January 4, 2022, petitioner initiated this action.  In answer to the complaint, real parties in interest raised the agreement as an affirmative defense.  Over the following year, petitioner propounded discovery and sought to schedule depositions; however, real parties in interest postponed them, stating an intent to mediate.  Mediation was coordinated for November 22, 2022, but real parties in interest unilaterally canceled it.

In January 2023, real parties in interest's current counsel sent a letter to petitioner's counsel asking if he would stipulate to arbitration, which was "purportedly discussed previously with [real parties in interest's] former counsel."  Petitioner's counsel did not respond.  On or about February 6, 2023, real parties in interest moved to compel arbitration.  Petitioner opposed the motion, contending the agreement is unconscionable and invalid on its face, petitioner is not a third party beneficiary, real parties in interest waived their right to arbitrate, and petitioner may not be compelled to arbitrate his wrongful death claim or have an arbitrator decide issues of enforceability.  Rejecting petitioner's contentions, the superior court granted the motion on the grounds the FAA controls, petitioner was bound by the agreement, real parties in interest did not waive arbitration, the agreement was not unconscionable, and the delegation clause deferred further issues of enforceability to the arbitrator.  In concluding that petitioner could be made to arbitrate his wrongful death claim, the court stated:  "Although wrongful death is technically a separate statutory cause of action in the heirs, it is in a practical sense derivative of a cause of action in the deceased.  Decedents are able to bind their heirs through wills and other testamentary dispositions, so the concept is not new or illogical.  Instead, it is the only pragmatic solution in such a situation.  (*Herbert v. Superior Court*

4

(1985) 169 Cal.App.3d 718, 725.)" The court did not reach the issue of whether petitioner is a third party beneficiary because he "is bound under the case law. [¶] [He] is bound by the arbitration agreement [Ms. Saenz] signed."

## II. DISCUSSION

### A. *Writ Review Is Appropriate*

An order compelling arbitration is interlocutory and not appealable. (*International Film Investors v. Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699, 703; cf. § 1294, subd. (a) [orders denying arbitration are appealable].) "The preferred procedure is to proceed by arbitration and attack confirmation on appeal." (*Atlas Plastering*, *Inc. v. Superior Court* (1977) 72 Cal.App.3d 63, 67.) Although writ relief is rarely warranted, writ review of orders compelling arbitration is appropriate (1) "if the matters ordered arbitrated fall clearly outside the scope of the arbitration agreement," or (2) the arbitration appears unduly time-consuming or expensive. (*Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 160 (*Zembsch*).)

Real parties in interest argue writ relief is not appropriate here because there "has been no final determination that [petitioner's] claim for wrongful death is subject to arbitration." We disagree. Acknowledging the wrongful death claim is "technically a separate statutory cause of action in the heirs," the superior court concluded that petitioner is bound by the agreement because his claim is derivative of Ms. Saenz's claims, and she was able to bind him through the agreement just as she was able to bind him through a will or other testamentary disposition.

5

Review by writ of mandate is appropriate because the matter ordered arbitrated is not within the scope of an enforceable arbitration agreement. (*Zembsch*, *supra*, 146 Cal.App.4th at p. 161.) Although petitioner does not assert that arbitration would be too costly or inefficient, it necessarily follows that arbitration of any claim "compelled in the absence of a valid, enforceable arbitration agreement is an unduly time consuming and expensive proposition." (*Medeiros v. Superior Court* (2007) 146 Cal.App.4th 1008, 1014, fn. 7.) Writ review "avoid[s] having [the] parties try a case in a forum where they do not belong, only to have to do it all over again in the appropriate forum." (*Ibid*.)

Having concluded that writ review is appropriate, we move on to the merits.

*B. Petitioner Is a Third Party to the Agreement and May Not Be Compelled to Arbitrate His Wrongful Death Claim*

Petitioner contends he may not be compelled to arbitrate his wrongful death claim because he was not a party to the agreement. We agree.

Whether an arbitration agreement is binding on a third party (e.g., a nonsignatory) is a question of law subject to de novo review. (*Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680 (*Daniels*); *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1512.) In general, a party cannot be compelled to arbitrate a dispute that he or she has not agreed to resolve by arbitration. (*Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142; *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 ["The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration."].)

6

Here, petitioner is not a party to the agreement.  Therefore, he is not bound to arbitrate his separate wrongful death claim.  (*Fitzhugh v. Granada Healthcare & Rehabilitation Center*, *LLC* (2007) 150 Cal.App.4th 469, 474 (*Fitzhugh*) [surviving spouse not required to arbitrate wrongful death claim because no evidence showed that he signed the arbitration agreement in his personal capacity].)  Nonetheless, real parties in interest assert the lack of petitioner's signature is irrelevant because the agreement expressly states that it is governed by the FAA and binding on Ms. Saenz's heirs and successors, whose claims may arise out of or relate to any services provided by real parties in interest, and California law permits binding a nonsignatory to the agreement. We are not persuaded.

To begin with, we agree the FAA governs the agreement.  However, the court, not the arbitrator, must decide questions of whether an arbitration agreement is enforceable against a third party.  (*Benaroya v. Willis* (2018) 23 Cal.App.5th 462, 469-470 ["Although a nonsignatory can be compelled to arbitrate, California case law is clear that 'an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement.  [Citation.]  The question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance."].) Arbitration "does not operate without regard to the wishes of the contracting parties." (*Mastrobuono et al. v. Shearson Lehman Hutton*, *Inc.*, *et al.* (1995) 514 U.S. 52, 57.) "[N]othing in the [FAA] authorizes a court to compel arbitration . . . by any parties, that are not already covered in the agreement. . . .  [I]t ensures the enforceability of private agreements to arbitrate, but otherwise does not purport to place any restriction on a

7

nonparty's choice of a judicial forum." (*Equal Employment Opportunity Commission v. Waffle House, Inc.* (2002) 534 U.S. 279, 289.) Since petitioner did not sign the agreement, he is not bound to arbitrate his separate wrongful death claim. (*Fitzhugh, supra*, 150 Cal.App.4th at p. 474.)

We also agree that Ms. Saenz may bind her heirs and successors whose claims arise out of or relate to any services provided by real parties in interest. However, petitioner's wrongful death claim is not one of those claims because it is personal to him; it lies independent of survivor claims. "Unlike some jurisdictions wherein wrongful death actions are derivative, Code of Civil Procedure section 377.60 'creates a *new cause of action* in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived.'" (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 283.) Furthermore, the agreement does not indicate an intent to bind third parties with claims independent of the survivor claims. (*Daniels, supra*, 212 Cal.App.4th at p. 680.) When the plain language of an arbitration agreement does not contemplate third parties signing on their own behalf, absent evidence of their intent to waive any personal claims, the arbitration agreement is not enforceable against them individually. (*Holley v. Silverado Senior Living Management, Inc.* (2020) 53 Cal.App.5th 197, 204.) "Arbitration remains, as we mentioned above, a matter of consent." (*Ibid.*; see *Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843-844 (*Avila*).)

Finally, real parties in interest argue that a nonsignatory is bound to arbitrate his claims when a preexisting relationship with a sufficient "unity of interest" (including

8

agency, spousal relationship, and parent-child relationship) exists between the nonsignatory and the signatory to the arbitration agreement. They cite the following cases: *Gross v. Recabaren* (1988) 206 Cal.App.3d 771, 781 [when a "patient expressly contracts to submit to arbitration 'any dispute as to medical malpractice,' and that agreement fully complies with Code of Civil Procedure section 1295, it must be deemed to apply to *all* medical malpractice claims arising out of the services contracted for, regardless of whether they are asserted by the patient or a third party"]; *Mormile v. Sinclair* (1994) 21 Cal.App.4th 1508, 1511 [same]; *Herbert v. Superior Court* (1985) 169 Cal.App.3d 718, 724, 726-727 [§ 1295 permits patients who sign arbitration agreements to bind their heirs in wrongful death actions.]; and *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 841 [same] (*Ruiz*). These cases are distinguishable because they involved arbitration agreements entered into pursuant to section 1295.[2]

In *Ruiz*, the California Supreme Court held that section 1295 permitted patients who consented to arbitration to bind their heirs in actions for wrongful death. (*Ruiz*, *supra*, 50 Cal.4th at p. 841.) It concluded that "all wrongful death claimants are bound

---

[2] Section 1295, subdivision (a), states: "Any contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language: 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.'"

9

by arbitration agreements entered into pursuant to section 1295, at least when . . . the language of the agreement manifests an intent to bind these claimants." (*Ibid*.) However, the Court of Appeal in *Avila* held that this exception to the general rule that one who has not consented cannot be compelled to arbitrate applies only when the wrongful death claim is a result of professional negligence as defined under the Medical Injury Compensation Reform Act (MICRA; § 1295). (*Avila*, *supra*, 20 Cal.App.5th at pp. 841-842.)

In *Avila*, the decedent was admitted to defendants' long-term acute care hospital. His son signed an arbitration agreement as his agent under California's statutory power of attorney form. Five days later, the decedent died because of defendants' neglect, and the son initiated an action for negligence/willful misconduct, elder abuse, neglect, and wrongful death. (*Avila*, *supra*, 20 Cal.App.5th at pp. 838-839.) Defendants unsuccessfully petitioned to compel arbitration. (*Id*. at p. 839.) The issue before the Court of Appeal was whether the *Ruiz* exception to the general rule, that arbitration agreements must be the subject of consent rather than compulsion, was controlling when the action was best characterized as being one for elder abuse, not medical negligence. (*Avila*, at p. 842.) In deciding that the *Ruiz* exception did not apply, the *Avila* court stated: "What matters is . . . the basis of the claims as pleaded in the complaint. If the primary basis for the wrongful death claim sounds in professional negligence as defined by MICRA, then section 1295 applies. If, [however], the primary basis is under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) . . . , then section 1295 does not apply and neither does *Ruiz*'s exception to the general

10

rule that one who has not consented cannot be compelled to arbitrate." (*Avila*, at p. 842; accord, *Daniels*, *supra*, 212 Cal.App.4th at p. 682.)  Thus, the determining factor is whether the wrongful death claim is primarily based on professional negligence or physical elder abuse.  (*Ibid*.)

Here, petitioner's wrongful death claim is not based on professional negligence as defined by MICRA.  Instead, the complaint was pleaded as one for negligence/willful misconduct, elder abuse, and neglect under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.).  "Neglect includes the failure to assist in personal hygiene, or in the provision of food, clothing, or shelter; the failure to provide medical care for physical and mental health needs; the failure to protect from health and safety hazards; and the failure to prevent malnutrition or dehydration." (*Sababin v. Superior Court* (2006) 144 Cal.App.4th 81, 88.)  "Under the [Elder Abuse and Dependent Adult Civil Protection] Act, neglect '"refers not to the substandard performance of medical services but, rather, to the 'failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations.'  [Citation.]  Thus, the statutory definition of 'neglect' speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care."'"  (*Avila*, *supra*, 20 Cal.App.5th at p. 843.)

For these reasons, we conclude the superior court erred by granting the petition to compel arbitration as to petitioner's wrongful death cause of action.

11

*C. Ms. Saenz's Causes of Action Are Arbitrable*

Petitioner contends the superior court must decide whether Ms. Saenz's claims should be compelled into arbitration or remain in superior court to be adjudicated contemporaneously with his wrongful death claim. (§ 1281.2.) We disagree.

"In accordance with choice-of-law principles, the parties may limit the trial court's authority to stay or deny arbitration under the [California Arbitration Act] by adopting the more restrictive procedural provisions of the FAA." (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 157 (*Valencia*).) "Generally, the FAA obligates *federal* courts to apply *state law* when interpreting an arbitration clause. [Citations.] Thus, a *federal* court would apply *California law* when determining the validity of an arbitration clause in a case involving California residents or employees. [Citations.] [¶] . . . 'Under California law, ordinary rules of contract interpretation apply to arbitration agreements. . . . "'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. . . . If contractual language is clear and explicit, it governs.'"'" (*Id*. at p. 177.)

"[T]he FAA's procedural provisions [(9 U.S.C. §§ 3, 4, 10, 11)] do not apply in state court *unless* the parties expressly adopt them. . . . [T]he question is not whether the parties adopted the CAA's procedural provisions: The state's procedural statutes ([Code Civ. Proc.,] §§ 1281.2, 1290.2) apply by default because Congress intended the comparable FAA sections (9 U.S.C. §§ 3, 4, 10, 11) to apply in federal court. The question, therefore, is whether the parties expressly incorporated the FAA's procedural provisions into their agreements," thus eliminating the superior court's authority under

section 1281.2, subdivision (c).  (*Valencia*, *supra*, 185 Cal.App.4th at p. 177.)  This question "'is a question of law involving interpretation of statutes and the contract (with no extrinsic evidence).  We therefore apply a de novo standard of review.'"  (*Id*. at pp. 161-162.)

"A state's procedural statutes automatically apply in state court *unless* the parties expressly agree otherwise."  (*Valencia*, *supra*, 185 Cal.App.4th at p. 179; see *Volt Information Sciences*, *Inc. v. Leland Stanford Junior University* (1989) 489 U.S. 468, 476, 479 ["Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.  Just as they may limit by contract the issues which they will arbitrate, . . . so too may they specify by contract the rules under which that arbitration will be conducted."]; *Cronus Investments*, *Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 394 ["[T]he language of the arbitration clause . . . calling for the application of the FAA 'if it would be applicable,' should not be read to preclude the application of section 1281.2[, subdivision] (c), because it does not conflict with the applicable provisions of the FAA and does not undermine or frustrate the FAA's substantive policy favoring arbitration."  However, parties may expressly designate that any arbitration proceeding is governed under the FAA's procedural provisions rather than state procedural law.]; *Cable Connection*, *Inc. v. DIRECTV*, *Inc*. (2008) 44 Cal.4th 1334, 1352 ["Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.  Just as they may limit by contract the issues which they will arbitrate [citation], so too may they specify by contract the rules under which that arbitration will be

13

conducted."].)  Here, article I, section 1.8, of the agreement states:  "This agreement shall be construed and enforced in accordance with and *governed by* the Federal Arbitration Act and *the procedures set forth in the Federal Arbitration Act*."  (Italics added.)  Because the agreement expressly adopts the FAA's procedural provisions, California's procedural statutes do not apply.  Consequently, the superior court lacks authority under section 1281.2.[3]

Having concluded that petitioner's claim is arbitrable, but Ms. Saenz's claims are not, we are aware that the parties may be required to participate in duplicative proceedings.  However, we are constrained by the express language in the agreement.  As the California Supreme Court has acknowledged:  "[T]he FAA itself contains no provision designed to deal with the special practical problems that arise in multiparty contractual disputes when some or all of the contracts at issue include agreements to arbitrate.  California has taken the lead in fashioning a legislative response to this problem, by giving courts authority to consolidate or stay arbitration proceedings in these situations in order to minimize the potential for contradictory judgments."  (*Cronus Investments*, *Inc. v. Concierge Services*, *supra*, 35 Cal.4th at p. 392.)  But that authority— section 1281.2, subdivision (c)—is inapplicable here because the parties expressly decided that the agreement "shall be construed and enforced in accordance with and *governed by* the Federal Arbitration Act and *the procedures set forth in the Federal Arbitration Act*."  (Italics added.)  "While we may question the wisdom of the parties'

---

[3] Since section 1281.2 does not apply, the issue of whether real parties in interest waived their right to arbitrate (§ 1281.2, subd. (a)) is moot.

choice, and decry the potential for inefficiency, delay, and conflicting rulings, the parties were free to choose their arbitration rules. The court will not rewrite their contract." (*Rodriguez v. American Technologies*, *Inc.* (2006) 136 Cal.App.4th 1110, 1122.)

### III.  DISPOSITION

The petition for writ of mandate is granted.

Let a writ of mandate issue directing the superior court to (1) vacate its order granting real party in interest's motion to compel arbitration, and (2) enter a new order denying the motion as to petitioner's claim only.

Each party shall bear their own costs in this writ proceeding.

In the interest of justice, the clerk of this court is directed to issue the remittitur immediately upon filing of this opinion. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

CODRINGTON
J.

MENETREZ
J.

15