Filed 2/6/24  Gavert v. CF Modesto CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GERALDINE GAVERT, et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>CF MODESTO, LLC,<br><br>Defendant and Appellant. | F084515<br><br>(Super. Ct. No. CV-21-005754)<br><br><br>**OPINION** |

APPEAL from an order of the Superior Court of Stanislaus County.  Stacy P. Speiller, Judge.

Lewis Brisbois Bisgaard & Smith, Tracy D. Forbath, Emily D. Hyatt, and Kathleen M. Walker, for Defendant and Appellant.

Prada & Associates, Marisella T. Prada and Katja M. Grosch, for Plaintiffs and Respondents.

-ooOoo-

James Gavert, after undergoing spinal surgery, entered rehabilitation at Modesto Post Acute Center (Modesto).  He unfortunately passed away only two months later from alleged complications due to infections he acquired while at Modesto.

Geraldine Gavert—James's wife and successor—sued Modesto and two physicians, as did James's daughters, Rhonda and Rachelle (collectively, the Gaverts). James, however, had signed an agreement with Modesto binding not only himself but his family to arbitrate *all* claims.

The agreement selected the Federal Arbitration Act as the "procedural rules" governing arbitration, and specifically "excluded" Code of Civil Procedure[1] section 1281.2, subdivision (c), which otherwise vests discretion in trial courts to deny arbitration if there is a risk of inconsistent rulings with other claims involving third parties. Modesto accordingly petitioned the trial court to compel arbitration.

The trial court denied the petition, finding, without elaboration, the Gaverts were not bound by the arbitration agreement because they did not "individually sign[]" it. The court also exercised its section 1281.2, subdivision (c) discretion to deny arbitration because it believed there existed a risk of inconsistent rulings.

On appeal, Modesto contends the trial court erred in two ways. One, the Gaverts were bound by James's signature because the arbitration agreement complied with section 1295 which allows a patient to bind their heirs to arbitration. Two, section 1281.2, subdivision (c) simply did not apply because James and Modesto had so agreed. The Gaverts, for their part, defend the trial court's ruling, claim James was incompetent to sign the agreement, and argue an agreement to exclude section 1281.2, subdivision (c) is void under Civil Code section 3513.

We conclude James, if competent, validly bound his family to arbitrate all claims. On remand, the court should first determine whether James competently entered into the arbitration agreement.[2] If he did, the trial court should grant the petition. It should then

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] The Gaverts asserted James's incompetence in the trial court, but the judge failed to rule on the issue. Modesto suggests the court impliedly found James was competent,

2.

exercise its discretion to determine in which order the claims will proceed, i.e., arbitration or the claims against the physicians.  If he was not competent, then there is no valid agreement and the court should deny the petition.

## BACKGROUND[3]

After James underwent spinal surgery, he was admitted to Modesto for rehabilitation.  Upon admittance, he signed an agreement to arbitrate all claims against Modesto, whether brought by himself or a family member.  Two months later, he succumbed to an apparent infection.

*Arbitration Agreement*

At the outset, the arbitration agreement notes it was not a precondition to admission to Modesto.  "Article 1" provides "any dispute as to medical malpractice," defined as services "unnecessary or unauthorized" or "improperly, negligently, or incompetently rendered," "will be determined by submission to arbitration as provided by California law …."

"Article 2" states "any dispute … including any action for injury or death arising from negligence, intentional tort and/or statutory causes of action (including all California Welfare and Institutions Code sections and Health and Safety Code section 1430), will be determined by submission to binding arbitration …."  "Article 3" reiterates arbitration was "not a precondition to receiving medical treatment, care, [and] services …."

"Article 4" explains the agreement is "binding on all parties, including [James's] representatives, executors, family members, and heirs who bring any claims individually or in a representative capacity."  It also states James's "representatives, agents, executors,

---

and the Gaverts failed to appeal that implied finding.  We disagree the Gaverts were required to appeal a nonexistent finding.

[3] Our summary is largely based on the Gaverts's complaint.  We merely summarize the alleged facts to provide context; factual resolutions are pending litigation.

family members, successors in interest and heirs who execute this [a]greement below on the signature line are doing so not only in their representative capacity … but also in their individual capacity ….”

"Article 6"[4] provides that "the parties agree … California Civil Code of Procedure [section] § 1281.2(c) is excluded" because "the parties mutually desire to have any and all disputes submitted to binding arbitration."  It emphasizes "[t]he parties do not want any claims not subject to arbitration to impede any and all other claims from being ordered to binding arbitration."

"Article 7" selects "the Federal Arbitration Act [(FAA)] and [its] procedural rules" as the law governing "any petition to compel arbitration …."  At the end, in red font,[5] the agreement reinforces "any issue of medical malpractice" *and* "all claims … other than a claim for medical malpractice," will be decided in arbitration.  Only James and Modesto signed the agreement—signature lines for James on his "behalf … and as an [i]ndividual" are blank.[6]

*Complaint*

The Gaverts, on James's behalf and as individuals, filed a complaint in superior court.  Together, James and the Gaverts alleged negligent hiring against Modesto and negligent and intentional infliction of emotional distress and survival against Modesto and the physicians.

---

[4] Article 5 deals with retroactivity to date of admission, presumably to cover the situation an arbitration agreement is not signed on the first day.

[5] These warnings in red font are mandated by section 1295.

[6] The blank signature lines refer back to Article 4, which contemplates the scenario someone other than the patient signs the agreement—for example, a family member with power of attorney.  Because James himself signed the agreement, the signature lines for a representative or heir are immaterial, as is the explanation in Article 4 that anyone signing on James's behalf is also signing on his or her own behalf.

Solely on James's behalf, the complaint alleged medical malpractice against the physicians, elder abuse, negligence, and tort per se against Modesto and the physicians, and violation of resident rights, fraud, and concealment against Modesto. The Gaverts, as individuals, alleged loss of consortium and wrongful death against Modesto and the physicians.

*Petition to Compel Arbitration*

Modesto petitioned the trial court to compel arbitration. It argued the arbitration agreement complied with section 1295 and thus bound both James and the Gaverts.

Opposing the petition, the Gaverts contended they were not bound by the agreement because they did not sign it and compelling only James's claims to arbitration, or only those against Modesto but not those against the physicians, "would result in conflicting rulings of law and fact" between arbitration and "the trial court," as described in section 1281.2, subdivision (c). They also claimed the complaint involved elder abuse, which meant arbitration was "discouraged," the clause precluding section 1281.2, subdivision (c) was void under Civil Code section 3513, and James was otherwise incompetent to enter into the agreement.

*Ruling*

In full, the trial court ruled the Gaverts were "bringing individual claims as well as survivor claims. There is no evidence [the Gaverts] individually signed the arbitration agreement. Therefore, they are not bound by it. The Court exercises its discretion to deny arbitration over the survivorship claims to avoid conflicting rulings."

## DISCUSSION

This appeal involves a single question: Should the trial court have granted the petition to compel arbitration? Answering that question centers around interpreting the arbitration agreement and determining whether its provisions are enforceable.

We find the arbitration agreement complies with section 1295, James and Modesto selected the FAA to control, they validly excluded section 1281.2, subdivision (c), and

5.

the Gaverts are thus bound to arbitration *if James was competent*. Because the trial court failed to rule on James's competency, we will remand for that purpose and then, depending on that ruling, direct the court to grant or deny the petition to compel arbitration.

### A. General Arbitration Law

" '[T]he Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125.) " 'Arbitration is favored in this state as a voluntary means of resolving disputes, and this voluntariness has been its bedrock justification.' [Citations.] Arbitration contracts are vigorously enforced out of respect for the parties' mutual and voluntary agreement to resolve disputes by this alternative means." (*Id.* at p. 129; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*) [" '[G]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' "].) " '[C]ourts will " 'indulge every intendment to give effect to such proceedings.' " ' " (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 830; *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 763.) "Any doubts or ambiguities as to the scope of the arbitration clause itself should be resolved in favor of arbitration." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 386 (*Cronus*).)

Although " 'arbitration derives its legitimacy from the fact that the parties consent to resort to the arbitral forum rather than to litigation, with its possibility of a jury trial,' " "various legal theories allow for delegated authority to consent [to arbitration]. Not only do common law principles such as fiduciary duty and agency permit enforcement of arbitration agreements against nonsignatory third parties, but the Legislature can also provide for the reasonable delegation of authority to consent." (*Pinnacle, supra,* 55 Cal.4th at p. 240.)

One common scenario is "the health care setting …." (*Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 852 (*Ruiz*).)  There, the Legislature enacted section 1295 "intending to permit patients to bind their heirs to health care arbitration agreements."  (*Ibid.*)

" ' " 'Whether an arbitration agreement is binding on a third party (e.g., a nonsignatory) is a question of law subject to de novo review.' " ' " (*Pillar Project AG v. Payward Ventures, Inc.* (2021) 64 Cal.App.5th 671, 675.)  Likewise, " '[w]here, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo.' " (*Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 219.)

**B.  The Arbitration Agreement Here Complies With Section 1295**

"Section 1295 was enacted as part of the Medical Injury Compensation Reform Act of 1975 …." (*Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 577 (*Reigelsperger*).) "The purpose of section 1295 [was] to encourage and facilitate arbitration of medical malpractice disputes.  [Citations.]  Accordingly, the provisions of section 1295 are to be construed liberally."  (*Id.* at p. 578.)  It "contemplates that all medical malpractice claims, including wrongful death claims, may be subject to arbitration agreements between a health care provider and the patient." (*Ruiz, supra,* 50 Cal.4th at p. 841.)

"[S]ection 1295, construed in light of its purpose, is designed to permit patients who sign arbitration agreements to bind their heirs in wrongful death actions."  (*Ruiz, supra,* 50 Cal.4th at p. 849.)  "[S]ection 1295 does not distinguish between malpractice claims asserted by the patient or the patient's estate, and wrongful death claims arising out of alleged malpractice committed against the patient: it is evident that both sorts of claims are intended to be encompassed by agreements entered into pursuant to section 1295."  (*Id.* at p. 850.)

The intent and ability to bind all heirs is buttressed by the fact " 'it is obviously unrealistic to require the signatures of all the heirs, since they are not even identified until the time of death, or they might not be available when their signatures are required.

7.

Furthermore, if they refused to sign they should not be in a position possibly to delay medical treatment to the party in need.' " (*Ruiz, supra,* 50 Cal.4th at p. 850.)

"[I]f a spouse or adult children were permitted to litigate wrongful death or loss of consortium claims 'the purpose of section 1295 would be defeated ….' " (*Ruiz, supra,* 50 Cal.4th at p. 851.) "Requiring that wrongful death claimants be bound by arbitration agreements only when they themselves have been signatory to them effectively forecloses that option for practical and public policy reasons." (*Ibid.*)

"To ensure that a patient understands that he is giving up his right to have a malpractice claim tried in court, section 1295 requires uniform language for arbitration agreements in medical services contracts." (*Reigelsperger, supra,* 40 Cal.4th at p. 578, fn. omitted.) The arbitration agreement in this case complies with section 1295.[7] Because it complies with section 1295, it "is not a contract of adhesion, nor

---

[7] "Section 1295 provides in pertinent part:

'(a) Any contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language: "It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration."

(b) Immediately before the signature line provided for the individual contracting for the medical services must appear the following in at least 10-point bold red type:

"NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT." ' " (*Reigelsperger, supra,* 40 Cal.4th at p. 578, fn. 3.)

unconscionable nor otherwise improper," and is binding on the Gaverts. (§ 1295, subd. (e).)

### C. Statutory Discretion to Deny Arbitration

Notwithstanding a binding arbitration agreement, the California Arbitration Act (CAA), in section 1281.2, subdivision (c), vests discretion in judges to "stay or deny arbitration where (1) some of the parties to the action were not parties to the agreement, and (2) proceedings in different forums—arbitral and judicial—could result in conflicting rulings on a common issue of fact or law." (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 156-157 (*Valencia*).) The Gaverts contend the trial court in this case retained its discretion to deny arbitration on this ground.

Put simply, section 1281.2, subdivision (c) is "[in]applicable to an agreement to arbitrate disputes as to the professional negligence of a health care provider made pursuant to Section 1295." (§ 1281.2, subd. (c).) The arbitration agreement in this case was made pursuant to section 1295 and the trial court accordingly lacked discretion to deny arbitration on this basis. Nonetheless, we further explain why the FAA also prevents its application in this case.

### D. The FAA Controls

The arbitration agreement in this case selects the FAA as its governing law. " 'In accordance with choice-of-law principles, the parties may limit the trial court's authority to stay or deny arbitration under the CAA by adopting the more restrictive procedural provisions of the FAA.' " (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 345 (*Victrola*).) Where, as here, "an agreement provides that [it] shall be governed by the FAA, the FAA governs a party's motion to compel arbitration." (*Id.* at p. 346; see *Cronus, supra,* 35 Cal.4th at p. 394 [sanctioning FAA selection].)

### E. The Arbitration Agreement Precludes Section 1281.2, Subdivision (c)

As noted, the CAA permits a court to deny arbitration in the "peculiar situation that arises when a controversy also affects claims by or against other parties not bound by

the arbitration agreement." (*Cronus, supra,* 35 Cal.4th at p. 393.) "The [FAA] (9 U.S.C. §§ 1-16)," on the other hand, "does *not* permit a trial court to stay or deny arbitration in those circumstances. Rather, the FAA requires the arbitration of all claims within the scope of an arbitration provision even if the action includes nonarbitrable claims by or against third parties." (*Valencia, supra,* 185 Cal.App.4th at p. 157.)

" 'The question of whether [an agreement] incorporated the FAA's procedural provisions, thereby *eliminating* the trial court's authority under section 1281.2[, subdivision ](c), "is a question of law involving interpretation of statutes and the contract …. We … apply a de novo standard of review." ' " (*Victrola, supra,* 46 Cal.App.5th at p. 346, emphasis added.)

It is clear the parties in this case intended the FAA to both substantively and procedurally govern arbitration. Article 7 in the arbitration agreement explicitly provides "the [FAA] and [its] procedural rules … shall govern any petition to compel arbitration …."[8] (See *Eminence Healthcare, Inc. v. Centuri Health Ventures, LLC* (2022) 74 Cal.App.5th 869, 880 [plain language controls]; Civ. Code, § 1638 ["The language of

---

[8] In total, Article 7 states: "This Agreement relates to the Resident's admission to the Facility, and the Facility, among other things, participates in the Medicare and/or Medi-Cal programs and/or procures supplies from out of state vendors. The parties, therefore, agree that the underlying admission to the Facility involves interstate commerce. Accordingly, this Agreement is to be governed by the federal Arbitration Act and the procedural rules set forth in the Federal Arbitration Act (9 U.S.C. Sections 1-16) shall govern any petition to compel arbitration and the selection of an arbitrator, should the parties be unable to mutually agree upon a single neutral arbitrator. The arbitration shall be venued in a location convenient for all parties."

Notably, Article 1, as required by section 1295, provides: "any dispute … will be determined by submission to arbitration by California law …." This reference to California law does not refute Article 7's choice-of-law. (See *Victrola, supra,* 46 Cal.App.5th at pp. 349-350 ["specific directive that … enforcement will be governed by the FAA is paramount to any general statement that disputes will be decided as provided by California law."].)

10.

a contract is to govern its interpretation, if the language is clear and explicit[.]"].)  It could not be more clear.

It is true that in *Cronus,* the Supreme Court recognized section 1281.2, subdivision (c), did "not contravene the letter or the spirit of the FAA."  (*Cronus, supra,* 35 Cal.4th at p. 393.)  In other words, it was not incompatible with the FAA.  The agreement in this case, however, not only incorporated the FAA and its procedural rules, it includes an unambiguous clause precluding the trial court from applying section 1281.2, subdivision (c).

The Gaverts suggest *Cronus* does not support this conclusion because it did not so hold.  They are correct in that *Cronus* did not hold the FAA *itself* "preclude[s] application of [section] 1281.2[, subdivision (c)] …."  (*Cronus, supra,* 35 Cal.4th at p. 394.)  But the preclusion clause in this case goes one step further and explicitly prohibits its application.  We see no reason why this clause is not enforceable.  (Cf. *Valencia, supra,* 185 Cal.App.4th at p. 157 [FAA demands arbitration notwithstanding possibility of inconsistent rulings involving third parties]; *Cronus, supra,* 35 Cal.4th at p. 386 ["Any doubts or ambiguities as to the scope of the arbitration clause itself should be resolved in favor of arbitration."].)

To undermine the preclusion clause, the Gaverts rely upon Civil Code section 3513, which states in part, "a law established for a public reason cannot be contravened by a private agreement."  "Consistent with this provision, [the Supreme Court has] explained that 'a party may waive a statutory provision if a statute does not prohibit doing so …, the statute's "public benefit … is merely incidental to [its] primary purpose" …, and "waiver does not seriously compromise any public purpose that [the statute was] intended to serve" ….' "  (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 961 (*McGill*).)  We are not persuaded.

"[S]ection 1281.2[, subdivision ](c) is *not* a special rule limiting the authority of arbitrators.  It is an evenhanded law that allows the trial court to stay arbitration

11.

proceedings while the concurrent lawsuit proceeds *or* stay the lawsuit while arbitration proceeds to avoid conflicting rulings on common issues of fact and law amongst interrelated parties. Moreover, '[it] is not a provision designed to limit the rights of parties who choose to arbitrate or otherwise to discourage the use of arbitration . Rather, it is part of California's statutory scheme designed to enforce the parties' arbitration agreements, as the FAA requires." (*Cronus, supra,* 35 Cal.4th at p. 393.)

More importantly, the purpose underlying section 1281.2, subdivision (c), relative to this case, is to facilitate arbitration. It recognizes its inapplicability to agreements "pursuant to [s]ection 1295," which in turn was enacted "to encourage and facilitate arbitration of medical malpractice disputes." (*Ruiz, supra,* 50 Cal.4th at p. 844.) Because section 1281.2, subdivision (c)'s legislatively determined preclusion favoring arbitration in medical malpractice cases does not contravene that purpose, Civil Code section 3513 is inapposite. To hold otherwise would require us to rewrite the law and reject the Legislature's will. (Cf. *McGill, supra,* 2 Cal.5th at p. 962 [arbitration agreements "may not … be invalidated 'by defenses [to arbitration] that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' "], quoting *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 (*Concepcion*).)

**F. Elder Abuse and Arbitration**

Last, the Gaverts claim James's "[i]ndividual [c]laims [a]re [p]redicated on [e]lder [a]buse and [n]ot [p]rofessional [n]egligence," nullifying section 1295. They cite to *Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835. There, the appellate court reasoned section 1295 did not apply "[i]f … the primary basis" for the complaint was "under the Elder Abuse and Dependent Adult Civil Protection Act …." (*Id.* at p. 842.) That case is readily distinguishable because it did not involve "a claim for

12.

medical malpractice ….'"[9] (*Id.* at p. 843) This case undoubtedly involves medical malpractice and section 1295 is implicated.

In the trial court, the Gaverts also argued James's elder abuse claim was not subject to arbitration. (See Health and Saf. Code, §§ 1430 & 1599.81, subd. (d).) In *Fitzhugh, supra,* 150 Cal.App.4th 469, the appellate court upheld a ruling denying arbitration and recited "the Legislature's expression of public policy that under no circumstances may a patient or resident waive his or her right to sue for violations of rights under the Patients Bill of Rights, or other federal and state laws and regulations, which would include the existing Elder Abuse and Dependent Adult Civil Protection Act." (*Id.* at p. 476.)

Even if we agreed, this would not justify denying arbitration under section 1281.2, subdivision (c) because the elder abuse claim is brought on James's behalf in *his* capacity. "[T]he presence of a nonarbitrable cause of action is not sufficient by itself to invoke the trial court's discretion to deny arbitration under … section 1281.2, subdivision (c): 'The mere fact that some claims are arbitrable and some are not is surely not the "peculiar situation" meant to be addressed by … section 1281.2 [, subdivision] (c) ….' " (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1409.) "Because we [will] direct the trial court to grant the petition to compel arbitration, … the elder abuse cause of action may appropriately be resolved in arbitration." (*Id.* at p. 1409, fn. 3.)

Most importantly, the FAA demands arbitration in this case. When the FAA applies, as it does here, it preempts state laws disfavoring arbitration. (*Concepcion,*

---

[9] *Avila* is also distinguishable on the basis the decedent did not personally sign the arbitration agreement. (*Avila, supra,* 20 Cal.App.5th at pp. 838, 845.) Other cases relied upon by the Gaverts are similarly distinguishable. (E.g., *Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 676-678, 680 [plaintiff not bound because decedent did not sign]; *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 474 (*Fitzhugh*) [same].)

*supra,* 563 U.S. at p. 341.)  Elder abuse in California is no exception.  (*Valley View Health Care, Inc. v. Chapman* (2014 E.D. Cal.) 992 F.Supp.2d 1016, 1040-1041; see *Victrola, supra,* 46 Cal.App.5th at p. 355 [when parties agree FAA applies, it preempts conflicting state law]; see also *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1141 [California rule "prohibiting waiver of [certain] hearing" preempted by FAA]; *Pinnacle, supra,* 55 Cal.4th at pp. 234-236 [discussing FAA preemption].)

### F.  Competency

Finally, the Gaverts contend James lacked competency to contract.  If correct, the entire arbitration agreement is unenforceable.  Because the Gaverts raised the contention in the trial court but the issue was not addressed, we believe it is appropriate to address as a threshold matter on remand.

Modesto objects, suggesting the Gaverts "should have filed a cross-appeal" had they wished to "challenge the trial court's implied ruling that James had capacity to sign the arbitration agreement …."  We disagree because, as the prevailing party in full, the Gaverts had no incentive to appeal, and the trial court should have ruled on the issue in the first instance.

### CONCLUSION

On remand, the trial court should first address and make findings whether James was competent to sign the arbitration agreement.  If not, it should reinstate its ruling denying arbitration.

If the trial court rules James was competent, it must grant the petition to compel arbitration of all claims brought against Modesto.  It should then exercise its discretion to determine whether arbitration with Modesto, or the lawsuit and against the physicians, should first proceed.  (§ 1281.2, subd. (d); *Preston v. Ferrer* (2008) 552 U.S. 346, 361 ["state law [is] the gap filler" where neither FAA nor arbitration agreement "address[] the order of proceedings" involving "pending litigation with third parties"].)

14.

## **DISPOSITION**

The May 27, 2022, order denying the petition to compel arbitration is vacated.  On remand, the trial court is directed to conduct proceedings consistent with this opinion. Each party to bear its costs.


SNAUFFER, J.

WE CONCUR:


LEVY, Acting P. J.


PEÑA, J.